IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) |
| | ) |
| RUSSELL ROBINSON, | ) |
| Defendant. | ) |

**ORDER**

Before the Court are defendant Russell Robinson's several motions to compel discovery. [ECFs 22, 48]. The government opposes the motions and defendant replied. [ECFs 57, 59].

I.  **BACKGROUND**

On November 30, 2021, the government filed a complaint against Robinson charging him with conspiracy to possess with intent to distribute five kilograms or more of cocaine. Criminal Compl. [ECF 1] at 1. According to the affidavit attached to the complaint, on the evening of November 29, 2021, a U.S. Customs and Border Protection ("CBP") Air and Marine Operations ("AMO") St. Thomas Marine Unit aircraft detected a vessel with its lights out between St. John and St. Thomas. [ECF 1-1] ¶ 7. CBP launched a boat and sent its agents to the center and east end of St. Thomas. *Id.* ¶ 8. The CBP aircraft informed agents that it saw two individuals on the vessel transfer several bags to other individuals in a truck in the Red Hook area. *Id.* ¶ 9. Agents from the Drug Enforcement Agency ("DEA"), Homeland Security Investigations ("HSI"), and the Federal Bureau of Investigations (FBI") mobilized to assist the CBP. *Id.* ¶ 10. Based on information provided by the CBP aircraft, DEA agents were able to locate the truck and followed

it to the waterfront district. *Id.* ¶ 11. There, HSI and AMO agents attempted a traffic stop but were unsuccessful. *Id.* With additional information from the CBP aircraft, agents again located the truck in the Hull Bay area, where they successfully arrested the occupants of the truck, one of whom was the defendant, and retrieved 210 kilograms of cocaine in duffle bags that defendants had dumped in the Hull Bay area during the chase. *Id.* ¶¶ 12-14.[1]

## II. APPLICABLE LAW

There is no general right to pretrial discovery in the criminal context analogous to discovery in the civil context. Instead, criminal pretrial discovery is primarily governed by Rule 16 of the Federal Rules of Criminal Procedure, as well as the government's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972),[2] and the Jencks Act, 18 U.S.C. 3500.[3] *See United States v. Ramos*, 27 F.3d 65, 68 (3d Cir. 1994) (explaining discovery in criminal cases is limited to those areas delineated in Rule 16(a)(1) "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution").

Rule 16 requires that the government produce the following categories of information upon the defendant's request: (1) the defendant's statements that are in written or recorded form

---

[1] On December 17, 2021, a grand jury returned an indictment charging Robinson with conspiracy to possess and possession with intent to distribute cocaine. [ECF 23].

[2] Under *Brady* and its progeny, the government has the obligation to disclose to the defense exculpatory evidence—meaning evidence that is both favorable and material to the defense. *United States v. Higgs*, 713 F.2d 39, 42 (3d Cir. 1983) ((stating that "[t]he rule laid out in *Brady* requiring disclosure of exculpatory evidence applies both to materials going to the heart of the defendant's guilt or innocence and to materials that might well alter the jury's judgment of the credibility of a crucial prosecution witness") (citing *Giglio*, 405 U.S. at 154)).

[3] The Jencks Act requires the government to provide the defense with statements of witnesses that the government intends to call at trial. The Jencks Act protects discovery of such witnesses' statements, however, "until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a); *United States v. Ramos*, 27 F.3d 65, 68 (3d Cir. 1994).

(including grand jury testimony) and any oral statement given by the defendant to a person then known by the defendant to be a government agent, Federal Rule of Criminal Procedure ("FRCrP") 16(a)(1)(A) & (B); (2) the defendant's prior criminal record, FRCrP 16(a)(1)(D); (3) all documents and tangible objects within the possession, custody or control of the government which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant, FRCrP 16(a)(1)(E); (4) results or reports of physical or mental examinations or other types of scientific tests in the government's possession which are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial, FRCrP 16(a)(1)(F); and (5) a written summary of expert testimony the government intends to use during its case in chief at trial, FRCrP 16(a)(1)(G).

### III. DISCUSSION

Defendant requests discovery of the following:

(1) "Registration and Serial Number of the DHS CBP aircraft, that allegedly made any and all recordings, video or otherwise, strictly related to this captioned case, on November 29, 2021."[4]

(2) "Model, make, serial number of pertinent equipment on board said aircraft that produced, said recordings, along *with documentation of last time equipment was calibrated, and by whom or what entity said calibrations were made. To include qualifications of individuals who did same calibrations.*"

(3) "All personnel records, internal affairs records, Inspector General records, Military records, and records of any investigation, arrest, citizen complaint, disciplinary actions, Internal affairs reports, Inspector General Reports, Criminal

---

[4] In his reply, defendant states that he is also seeking information about the CBP aircraft and its equipment in a FOIA request. [ECF 59] at 2.

*USA v. Robinson*
Criminal No. 21-27
Page 4

> Investigation Reports, and any and all other material, written or oral, revealing specific acts of dishonesty, misconduct, official malfeasance, etc[.], bearing on their character for truthfulness and honesty as well as their propensity for illegal behavior beyond the scope of their official duties as law enforcement agents, of any law enforcement agent who participated in the investigation, arrest, and prosecution of Robinson whether or not the government intends to call the agent as a witness in this case."[5]

[ECF 48-1] at 2 (emphasis in original).

> (4)  "[L]egible copies, of the *chain of Title Deed*, (or any 'treaty or record), documentation that legitimized the taking of the lands now known as, 'The Virgin Islands of the United States', from the Kalinago indigenous Tribe [on or about, November 14th, 1493], (Formerly called 'Carib Indians'), that transferred said lands to the Spanish Crown, and subsequently through various European Crowns, private companies, and entities, then ultimately Denmark, who sold same lands to the United States of America, which now *presumptively* exercises its Sovereignty over these lands, heretofore described above."[6]

[ECF 48-2] at 1 (emphasis in original).

> (5)  "Records/Reports of number of incidences, that DHS CBP AMO; National Park Rangers; DPNR; Police Blue Lightening: U.S. Coast Guard; or any law enforcement entity, stopped, interdicted any vessel, personal watercraft, dinghy of any type, on waters between St. John and St. Thomas, U.S.V.I.; St. Thomas and Hassel Islands, U.S.V.I.; St. Thomas and Water Island, U.S.V.I."

> (6)  "Responsive records can be limited to vessels / watercrafts traveling without safety/navigation lighting, after sun set."

---

[5] In his reply, defendant claims that one of the officers involved in his arrest filed a false police report. [ECF 59] at 1-2; *see also* [ECF 58].

[6] Although defendant sought the discovery of this information in two previously filed motions, *see* [ECFs 11, 22], the Court deferred its ruling on the issue when it resolved those motions, *see* [ECF 45] at 1 n.1. The Court resolves the open request herein.

>    (7)   "If possible catalog with dates, time of day, and time of year."
>
>    (8)   "Legible Copies of Executed Oaths of Office of AUSAS, Kyle Payne; Adam F. Sleeper."

*Id.* at 2.

The government states that it has already provided defendant with CBP AMO aircraft surveillance video showing defendant's pursuit and capture by law enforcement as well as a statement by the aircraft crew.  [ECF 57] at 5.  Regarding defendant's request for information regarding the aircraft itself, the government argues that defendant has not explained how such information is material in refuting the government's case.  *Id.*  With respect to defendant's request for real estate documents pertaining to the Territory,[7] as well as copies of the oaths of office taken by the assistant United States Attorneys, the government makes the same argument.  *Id.* at 6-7.

Next, the government avers that it is not obliged under Rule 16 to provide defendant with evidence to support his selective prosecution claim, as it is not a merits-based defense to the seminal charge of conspiracy.  [ECF 57] at 6-7.  In addition, the government promises that, to the extent that information becomes discoverable under the Jencks Act, the government will produce it "on the Friday before jury selection and trial, in accordance with the government's long-standing practice."  *Id.* at 3 n.1.  The government further promises to review the personnel files of all law enforcement officers involved in defendant's case and provide defendant, prior to trial, with any information that is either exculpatory or could be used for impeachment purposes.  *Id.* at 4 n.2.

Lastly, the government states that it is aware of its obligations under *Brady*.[8]  The

---

[7] The government further contends that it does not possess the real estate documents.  [ECF 57] at 6.

[8] *Brady* is not a general discovery device.  *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one.").

*USA v. Robinson*
Criminal No. 21-27
Page 6

government also acknowledges its *Giglio* and Jencks Act obligations,[9] and represents that it has complied with its Rule 16 obligations.[10]

Here, it is unclear how information regarding (1) the CBP aircraft involved in the case, (2) real estate documents relating to the Territory, and (3) executed oaths of office for assistant United States Attorneys is material to the defendant's defense. Regarding information about the CBP aircraft, although defendant could at some point move to suppress the introduction of the surveillance video, defendant does not allege, for example, that he was not the individual in the video or that the video was in some way faulty. Regarding the real estate documents and the oaths of office, defendant has similarly not made any showing of materiality. Further, as to the real estate documents, the government claims that they cannot produce them because they are not in its possession.

Next, regarding information about the personnel records of law enforcement officers involved in the case, the government states that it has yet to review these files but that when it does, it will provide defendant with any information that is either exculpatory or could be used by defendant for impeachment purposes. Nothing further is required of the government. *See* LRCr. 16.2.

Lastly, regarding defendant's request for information about other instances in which law enforcement officers stopped vessels in territorial waters—purportedly to support a claim of

---

[9] The Jencks Act provides that "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b); *accord United States v. Maury*, 695 F.3d 227, 248 (3d Cir. 2012) (stating "the government has no obligation to produce Jencks material until the witness has testified").

[10] Rule 16 was not designed to provide a defendant with a vehicle to discover the government's case in detail or the strategy it intends to pursue at trial. *United States v. Fioravanti*, 412 F.2d 407, 411 (3d Cir. 1969).

selective prosecution—such information is not available in the context of Rule 16. In *United States v. Armstrong*, the United States Supreme Court held "that Rule 16(a)(1)(C) authorizes defendants to examine Government documents material to the preparation of their defense against the Government's case in chief, but not to the preparation of selective-prosecution claims." 517 U.S. 456, 463 (1996). The Supreme Court explained: "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons [, e.g., race or religion] forbidden by the Constitution." *Id.* (alteration added).

### IV.   CONCLUSION

As the government is cognizant of its discovery obligations and has stated its intent to fulfill those obligations if it has not already done so, it is ORDERED that Robinson's motion to compel discovery [ECF 48] is DENIED. It is further ORDERED that Robinson's earlier motions to compel discovery [ECFs 11, 22], to the extent that they seek the discovery of real estate documents pertaining to the Territory, are DENIED.

**Dated:** April 22, 2022                              S_____
                                                                    **RUTH MILLER**
                                                                    United States Magistrate Judge