# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**RUSSELL ROBINSON,** )<br>)<br>**Defendant.** )<br>) | Case No. 3:21-cr-0027-001 |

**APPEARANCES:**

**DELIA L. SMITH, UNITED STATES ATTORNEY**
**KYLE PAYNE, ASSISTANT UNITED STATES ATTORNEY**
UNITED STATES ATTORNEY'S OFFICE
ST. THOMAS, U.S. VIRGIN ISLANDS
    *FOR THE UNITED STATES OF AMERICA*

**RUSSELL ROBINSON,** *PRO SE*
METROPOLITAN DETENTION CENTER - GUAYNABO
GUAYNABO, PUERTO RICO

**DAVID J. CATTIE, ESQ.**
THE CATTIE LAW FIRM, P.C.
ST. THOMAS, U.S. VIRGIN ISLANDS
    *STANDBY COUNSEL FOR DEFENDANT RUSSELL ROBINSON*

## MEMORANDUM OPINION

**Robert A. Molloy, Chief Judge**

    **BEFORE THE COURT** is Defendant Russell Robinson's ("Robinson") Motion Seeking Reconsideration of Revocation of Pre-Trial Bail, filed on June 16, 2023. (ECF No. 229.) The Government filed an opposition on June 30, 2023. (ECF No. 251.) Robinson filed a reply on July 6, 2023. (ECF No. 252.) For the reasons stated below, Robinson's motion for reconsideration is denied.[1]

---

[1] Although Robinson's reply brief asks that the Court reserve its decision on the instant motion until there has been a decision on Robinson's motion to dismiss on double jeopardy grounds, *see* ECF No. 252, the Court sees

Robinson is presently charged with conspiracy to possess with intent to distribute cocaine and possession with intent to distribute cocaine. (ECF No. 92.) On December 3, 2021, the Magistrate Judge ordered Robinson's pretrial release from custody subject to certain conditions. (ECF No. 14.) Relevant here, Robinson was expressly prohibited from contacting, "directly or indirectly, [] any person who is or may be a victim or witness in the investigation or prosecution[.]" *Id.* On November 28, 2022, the Magistrate Judge issued an order modifying Robinson's conditions of release but did not remove the prohibition against contacting potential witnesses in this case. *See* ECF No. 113.[2]

On June 2, 2023, the Government filed a motion seeking Robinson's immediate detention because Robinson had indirectly threatened a confidential source, "CS," one of the Government's potential witnesses in this case. *See* ECF No. 158. The next day, the Office of Probation issued a status report, noting the office believed Robinson had violated a condition of his pretrial release by contacting and threatening the son of a potential Government witness.[3] (ECF No. 160.) The Court issued a warrant for Robinson's arrest that same day. (ECF No. 161.) The Court then held a revocation hearing on June 6, 2023. (ECF No. 173.)

At the revocation hearing, the Court found that Robinson had indirectly threatened a potential witness based on Robinson's text messages and statements made during a phone call with the CS's son. *See id.* Based on the evidence produced at the revocation hearing, the Court determined that Robinson had intentionally violated a condition of his pretrial release by indirectly contacting and threatening a person he knew would be a potential witness in his case. *See id.* After considering Robinson's threatening statements, as well as the nature of the crimes charged in this case, the weight of the evidence, and the fact that Robinson has

---

no reason to delay adjudication on this issue as the two motions are not related and, therefore, may be decided independently.

[2] While the Court granted other motions by Robinson to modify his conditions of release, those orders were not substantive as they only allowed for temporary modifications. More importantly, those orders did not alter or remove the prohibition against contacting witnesses. *See, e.g.*, ECF No. 138 and ECF No. 148.

[3] The family member was the CS's son.

already been convicted of serious drug crimes,[4] the Court revoked Robinson's pretrial conditions of release and ordered that Robinson be detained pending trial. *See* ECF Nos. 173 and 176.

Robinson's case proceeded to trial on June 12, 2023. (ECF No. 202.) However, on June 14, 2023, the Court granted Robinson's motion for a mistrial. (ECF No. 226.) Consequently, Robinson remains in pretrial detention pending his upcoming trial on November 27, 2023. (ECF No. 255.)

On June 16, 2023, Robinson filed the instant motion requesting reconsideration of his pretrial detention. (ECF No. 229.) In his motion, Robinson makes several arguments in favor of vacating the Court's pretrial detention order.

Robinson first argues that he did not violate his pretrial conditions of release and, therefore, the violation cannot serve as a basis for pretrial detention. *See id.* While the Court found that Robinson violated the conditions by indirectly contacting and threatening one of the Government's potential witnesses, Robinson disagrees. For one, Robinson contends that the text messages and phone call to the CS's son did not contain any threats.[5] *See id.* at 1. Robinson argues that he was simply "'calling out'" the CS. (ECF No. 252.)

Second, even if his statements and texts to the CS's son were threatening, Robinson claims the threats were not made directly or indirectly to a potential Government witness. Robinson argues that because the Government did not include the CS as a proposed witness in its trial brief, the CS was not, in fact, a potential Government witness. *See* ECF No. 229 at 2. Additionally, Robinson claims that he did not violate a condition of release because the pretrial order prohibiting contact with witnesses does not include the word "potential" witnesses. *See id.* at 3. Therefore, Robinson reasons that since there was no express

---

[4] On August 3, 2005, Russell Robinson was convicted of (1) Conspiracy to Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1)(D), (2) Conspiracy to Import Cocaine, in violation of 21 U.S.C. §§ 952 and 963, and (3) Money Laundering Conspiracy, in violation of 18 U.S.C. § 1956(h). On February 28, 2007, Robinson was subsequently sentenced to 160 months incarceration. *See United States v. Hendricks, et al.*, 1:04-cr-05 (D.V.I.); *see also Robinson v. United States*, 1:08-cv-103 (D.V.I. Nov. 25, 2009) (ECF No. 26).

[5] Robinson does not dispute that he initiated communications with the CS's son, nor does he dispute that he made the statements that were the subject of his communications.

prohibition against contacting "potential" witnesses but rather only witnesses in fact, the no-contact pretrial release condition did not apply to the conduct at issue here.

Robinson offers several other bases for release as well. The Court issued the order of detention on June 6, 2023, six days before the June 12, 2023 trial date. *See* ECF Nos. 176 and 202. Robinson seems to imply that when the Court initially issued its order, the Court only expected Robinson's pretrial detention to last a few days. However, Robinson's original trial ultimately ended in a mistrial. (ECF No. 226.) Because of the mistrial and Robinson's anticipated appeals, he suggests that his pretrial detention will now last substantially longer than the Court originally anticipated. *See* ECF No. 229 at 6-7. Moreover, Robinson maintains that because he is representing himself *pro se*, he is put at a distinct disadvantage in filing motions and preparing for trial due to his limited ability to conduct legal research at the detention center in Guaynabo. *Id.*

Robinson's final argument for release involves what he alleges is a "life-threatening pre-existing medical condition." *Id.* at 7. While Robinson does not disclose the nature of his condition, he asserts that "his medical condition mandates diagnosis and treatment beyond the 'normal' in-house capabilities of [the Guaynabo detention center]." *Id.* at 8. Accordingly, Robinson maintains that he must be released to obtain proper medical treatment. For all these reasons, Robinson now urges the Court to vacate the pretrial detention order.

On June 30, 2023, the Government responded to Robinson's motion for reconsideration. (ECF No. 251.) In its response, the Government argues that before the Court may reopen a detention hearing, the movant must provide some new or unknown information that would materially affect the decision of whether to allow pretrial release. *See id.* The Government contends that since Robinson has "not provided new or material information that was not known at the initial hearing explaining why home incarceration should be removed as a condition of pre-trial release," reopening the issue would be inappropriate. *Id.* at 2. Consequently, the Government believes Robinson's motion for reconsideration should be denied.

*United States v. Robinson*
Case No.: 3:21-cr-0027-001
Memorandum Opinion
Page 5 of 15

Robinson filed a reply to the Government on July 6, 2023, wherein he essentially reiterates the arguments made in the original motion. (ECF No. 252.) Thus, the matter being fully briefed, it is now properly before the Court.

## II. LEGAL STANDARD

Pursuant to the Bail Reform Act ("BRA"), a criminal defendant must be released prior to trial unless a judicial officer finds, after a hearing, that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *United States v. Soriano Nunez*, 928 F.3d 240, 244 (3d Cir. 2015) (quoting 18 U.S.C. § 3142(e)(1)). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019).[6]

While the default under the BRA is pretrial release, certain conduct and offenses trigger a rebuttable presumption that no condition or combination of conditions would be appropriate to release the defendant. *See* 18 U.S.C. § 3142(e)(2). Relevant here, a violation of the Controlled Substance Act carrying a minimum sentence of ten years or more is one such offense that triggers the presumption of pretrial detention. *See id.* § 3142(e)(3)(A). If the defendant is unable to rebut the presumption, or other additional considerations contribute to sufficiently increase the defendant's flight risk or danger to the community, the defendant will be detained pending trial.

Once a court has ordered a defendant to be detained, the defendant may move for revocation of that order if he or she is able to prove that new "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2)(B). To be deemed new and material, the information warranting reconsideration "'must consist of truly changed circumstances, something unexpected, or a significant

---

[6] If the Government intends to show that the defendant is a flight risk, it must make a showing by a preponderance of the evidence. *See United States v. Himler*, 797 F.2d 156, 160-61 (3d Cir. 1986). If the Government, instead, intends to show that the defendant is a danger to the community, then it must prove the danger by clear and convincing evidence. *Id.* (citing 18 U.S.C. § 3142(f)).

*United States v. Robinson*
Case No.: 3:21-cr-0027-001
Memorandum Opinion
Page 6 of 15

event,'" and "'must relate in some significant or essential way to the decision whether to detain.'" *United States v. McAbee*, 628 F. Supp. 3d 140, 147–48 (D.D.C. 2022) (quoting *United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020) (internal quotations omitted) and *United States v. Worrell*, No. 1:21-CR-00292-RCL, 2021 WL 2366934, at *9 (D.D.C. June 9, 2021)).

If the defendant offers new and material information, then the Court may reconsider the detention order but must utilize the same factors the Court relied upon in the initial pretrial detention decision, i.e., "(1) the nature of the circumstances of the offense charged," (2) "the weight of the evidence against the person," "(3) the history and characteristics of the person," and "(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g); *see United States v. Rosati*, Crim No. 11-329-2, 2011 WL 5572617, at *1 (E.D. Pa. Nov. 16, 2011).

However, if the defendant asserts a due process challenge, the Third Circuit has directed district courts to consider several additional factors as well. Specifically, "the length of the detention that has in fact occurred, the complexity of the case, and whether the strategy of one side or the other has added needlessly to that complexity." *United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir. 1986). If detention is no longer justified after considering the original factors in favor of detention along with these additional considerations, the Court may release the defendant pending trial.

In addition to the above-mentioned process for rehearings, Section 3142(i) also "provides a 'limited safety valve provision' enabling courts to re-examine detentions decisions 'to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.'" *United States v. Gilbert*, 511 F. Supp. 699, 674 (E.D. Pa. 2021) (quoting *United States v. Washington-Gregg*, Crim No. 19-331, 2020 WL 1974880, at *5 (M.D. Pa. Apr. 24, 2020); 18 U.S.C. § 3142(i)).

Section 3142(i) is intended to be used "sparingly" and only in exceptional circumstances, such as when a defendant is suffering from a terminal illness or serious injury. *United States v. Hadjiev*, 460 F. Supp. 3d 553, 556 (E.D. Pa. 2020). Nothing short of *compelling circumstances* will support temporary release under section 3142(i). *See United*

States v. Maldonado*, 454 F. Supp. 3d 443, 449 (M.D. Pa. 2020) (collecting cases of compelling circumstances).

### III. DISCUSSION

The Court finds that Robinson has not provided sufficient new and material evidence which would warrant reconsideration, let alone revocation of the Court's pretrial detention order. The bases for Robinson's detention are as follows. First, the gravity of the charges pending against Robinson is significant. Robinson has been indicted on two serious drug trafficking charges which, if convicted on either count, carries a mandatory minimum of at least fifteen (15) years.[7] Under section 3142(e)(3)(A), these types of charges create a rebuttable presumption in favor of pretrial detention. *See* 18 U.S.C. § 3142(e)(3)(A). Accordingly, the nature of the charges against Robinson supports detention. *See United States v. Delker*, 757 F.2d 1390, 1400 (3d Cir. 1985).

Robinson's criminal record also indicates that his pretrial detention is appropriate. Not only has Robinson been arrested for first-degree murder,[8] he has already been convicted for serious drug trafficking offenses in another case. *See* ECF No. 161 (noting arrest for murder); *United States v. Hendricks, et al.*, 1:04-cr-05 (D.V.I.).

Moreover, the strength of the Government's case on the merits is exceptionally strong.[9] Not only has the Government provided substantial video and testimonial evidence, but Robinson is also raising a duress defense. Thus, his theory of the case effectively concedes that the Government can prove the elements of each offense charged beyond a

---

[7] Robinson is facing a mandatory minimum of fifteen (15) rather than ten (10) years because he was previously convicted for a serious drug offense as defined under 18 U.S.C. § 924(e)(2)(A). *See United States v. Hendricks, et al.*, 1:04-cr-05 (D.V.I.); 21 U.S.C. § 841(b)(1)(A) ("If any person commits such a violation [pursuant to 21 U.S.C. 841(b)(1)(A)] after a prior conviction for a serious drug felony or serious violent felony has become final, such person shall be sentenced to a term of imprisonment of not less than 15 years.").

[8] The Third Circuit explained in *United States v. Delker* that the Bail Reform Act "specifically provides for consideration of prior arrests in the release decision[.]" 757 F.2d 1390, 1400 (3d Cir. 1985) (citing S.Rep. No. 225, 98th Cong., 1st Sess. at 23 n. 66, reprinted in 1984 U.S. Code Cong. & Ad. News at 26 n. 66 (Supp. 9A)). Accordingly, the Court can consider Robinson's arrest for murder in the detention analysis.

[9] During the evidentiary hearing, the Government introduced video and testimonial evidence demonstrating that Robinson obtained multiple bags of cocaine at Vessup Beach and was also the driver of the vehicle used to escape pursuit by law enforcement officials once Robinson and his codefendant, Trevor Stephen, obtained the cocaine. *See* ECF No. 150.

reasonable doubt. Because the Court has yet to see any significant credible evidence supporting Robinson's duress theory, the Court finds that the weight of the evidence is decidedly in the Government's favor.

Finally, and most importantly, the Government demonstrated by clear and convincing evidence that Robinson is a present danger to a potential witness in this case. *See* ECF No. 173. The Court found that in the days following the May 30th omnibus hearing, Robinson violated his conditions of release by indirectly threatening a potential witness and members of the witness' family through text messages and phone calls.[10] This factor strongly weighs in favor of detention as it demonstrates he is a threat to the community. *See United States v. Salerno*, 481 U.S. 739, 749 (1987) (noting that "an arrestee may be incarcerated until trial if he presents a . . . danger to witnesses.") (citing *Bell v. Wolfish*, 441 U.S. 520, 534 (1979)); *see also United States v. Fontanes-Olivo*, 937 F. Supp. 2d 198, 202 (D.P.R. 2012) ("[T]he Bail Reform Act authorizes preventative detention in cases, like the present one, where the defendant attempts to injure or intimidate prospective witnesses.") (citing *United States v. Ploof*, 851 F.2d 7 (1st Cir. 1988)).

Not only has the Supreme Court indicated that pretrial detention is appropriate once a defendant attempts to injure or intimidate a prospective witness, but the legislative history of the BRA also emphasizes that defendants who have threatened potential witnesses pose a significant danger and should be detained pending trial. S.Rep. No. 98–225, at 7, 12, 15, 21, reprinted in 1984 U.S.C.C.A.N. 3182, 3190, 3195, 3198, 3204; *see also Delker*, 757 F.2d at 1400-01 (highlighting the importance of threats to potential witnesses in the pretrial detention analysis).

---

[10] Among the statements made by Robinson, some of the most concerning threatening language include statements such as: while "'other' people don't know how to get to [the CS] . . . Robinson could get to [the CS] with his [] eyes closed." *See* ECF No. 158-1. Robinson also texted the CS's son, "I bought a full page in [the] Florida sun sentinel complete with picture[s]. YOUR DAD works for the DEA and makes shit up. Also with alpha 66, and all the other terrorist related sh[**] he was into that he did. *Tell him call me or go to Cuba deported . . .*." (ECF No. 251.) (capitalization in the original; italics added). Robinson proceeded to text the CS's son "He f[***]ed up with his lies. I'm NOT those foolish Americans," and "I'll tell them about…the Aztec he bought in Puerto Rico for $65,000.00 and all the weed he sold and YOU sold. *Your asses going to jail. Including his wife.*" *Id.* (capitalization in the original; italics added). Robinson also wrote "He Climbed the wrong tree." *Id.* These examples capture just a few of the threatening statements Robinson made to the CS's family.

*United States v. Robinson*
Case No.: 3:21-cr-0027-001
Memorandum Opinion
Page 9 of 15

Accordingly, given these threats and the other factors considered, the Court remains convinced that pretrial detention is appropriate. Nothing in Robinson's instant motion alters the Court's prior determination to revoke his pretrial release. Nevertheless, the Court will address each of Robinson's contentions to explain why his arguments do not support altering the Court's prior order.

Robinson first asserts that he did not threaten anyone. (ECF No. 229 at 2.) However, the Court already considered this argument during the revocation hearing. *See* ECF No. 173. Therefore, this argument does not involve new material evidence that the Court may consider for the purposes of this decision. *See* 18 U.S.C. § 3142(f)(2)(B). Even if the Court were to reevaluate whether Robinson's statements were threats, the argument could not withstand even the slightest scrutiny as these statements and text messages were demonstrably intended to intimidate the CS and his family. *See supra* note 10 (highlighting the threatening statements made by Robinson).

As for the contention that Robinson did not violate his pretrial condition of release by indirectly contacting the CS, that argument is equally meritless. First, the pretrial condition at issue applied to both witnesses and potential witnesses. *See* ECF No. 14.[11] The Order directed Robinson to "avoid all contact, directly or indirectly, with any person who is or *may* be a victim or witness in the investigation or prosecution[.]" *Id.* (emphasis added). A person who "may" be a witness is, of course, a "potential" witness. It is of no significance that the order does not explicitly use the word "potential." Therefore, the pretrial conditions of release undoubtedly prohibited Robinson from indirectly contacting potential witnesses.

Robinson attempts to argue, alternatively, that even if his pretrial release conditions prohibited him from contacting potential witnesses, the CS was not a potential witness because the Government did not include the CS in its list of witnesses filed on June 2, 2023. (ECF No. 229 at 2.) The fact that the CS was not on the list of proposed witnesses is not significant. The Government may have intended to rely on the CS merely as a rebuttal

---

[11] The Court also notes that the pretrial release condition must apply to potential witnesses because no person becomes a witness, in the prosecutorial sense, until they testify at trial. Prior to that time, all witnesses are potential witnesses. Therefore, if this condition were to have any meaning, it would presumably have to apply to potential witnesses.

witness, in which case, the Government would not need to list the CS as a proposed witness in its trial brief.[12] More importantly, as the Court explained at the June 6, 2023 revocation hearing, Robinson was well aware of the CS's status as a potential witness when he made the threatening statements. During the May 30th omnibus hearing, the parties discussed the Government's desire to introduce certain 404(b) evidence. (ECF No. 150.) The Government indicated that the CS would likely be a necessary witness for introducing that evidence at trial. *See id.*[13] Thus, when Robinson made the threatening statements to the CS's son on June 1, 2023, Robinson was on notice that the CS was a potential witness in his case.[14] No reasonable person in Robinson's shoes would have any reason to believe that the CS was not a potential Government witness in this case. Therefore, this argument fails as well.

In any event, even if Robinson was correct, and he was allowed to contact the CS, the fact that Robinson did not violate a pretrial condition of release does not mean that Robinson's conduct did not warrant detention. As the Government correctly pointed out in its response, this line of argument is "flawed as it fails to address that the Court must consider whether the defendant poses a danger to any other person or the community." (ECF No. 251.); *see* 18 U.S.C. § 3142(g). Notwithstanding his pretrial release conditions, Robinson still made threatening statements to people in the community. *See* ECF No. 173. Robinson's conduct, therefore, indicates that he poses a danger to at least some members of the community. Consequently, the threatening statements support pretrial detention regardless of whether the conduct violated a condition of release.

---

[12] In fact, the Government noted at the hearing on May 30th that it might use portions of the 404(b) evidence and the CS's testimony as rebuttal evidence. (ECF No. 150.)

[13] At the hearing on May 30, 2023, the Court asked the Government "how do you intend to present this [404(b)] evidence?" The Government responded by stating "that [the evidence] would be presented through the confidential informant." (ECF No. 150.) Robinson knew who the confidential informant was. Not only had Robinson already reviewed the 404(b) evidence, which included videos of conversations between Robinson and the CS, but Robinson referred to the CS by name in filings seeking to exclude the Government's 404(b) evidence. *See* ECF No. 30 at 1. Therefore, Robinson knew the Government intended to call the CS as a witness when Robinson contacted the CS's son on June 1, 2023.

[14] When Robinson contacted the CS's son on June 1, 2023, the Government had not yet filed its proposed list of witnesses. *See* ECF No. 155 (filed on June 2, 2023). Therefore, as of June 1st, the last representation the Government had made on the record regarding the CS was that his testimony would be used at trial to introduce the 404(b) evidence. *See* ECF No. 150. Thus, Robinson had no reason to believe the CS was not a potential witness.

Robinson's next argument does not fair much better. Robinson argues, in essence, that the potential length of his confinement could be impermissibly long depending on the disposition of certain outstanding motions. *See* ECF No. 229 at 6-7. Robinson's argument does not significantly alter the Court's detention analysis and certainly does not warrant his release. Robinson implies that, given the Court's order declaring a mistrial in his case on June 14, 2023, his pretrial detention will be significantly longer than the Court originally intended when it ordered Robinson's detention on June 6, 2023. *See id.* However, an extended length of detention does not inherently warrant release. For one, the stringent requirements of the Speedy Trial Act protect Robinson from an unreasonably lengthy detention by ensuring his case goes to trial within 70 non-excludable days. *See United States v. Salerno*, 481 U.S. 739, 747 (1987) (determining that "the maximum length of pretrial detention is limited by the stringent time limitations of the Speedy trial Act"). To date, there has been no violation of Robinson's speedy trial rights, and thus, the length of Robinson's pretrial detention is presumably reasonable.

While the Third Circuit has acknowledged that even where there is no speedy trial violation, "at some point due process may require a release from pretrial detention…," the relevant inquiry is how long a person has already been detained as opposed to how long the person could realistically be detained leading up to trial. *Accetturo*, 783 F.2d at 388 (explaining that due process judgments regarding pretrial detention "should reflect such additional factors as the length of the detention that has *in fact occurred*…") (emphasis added). As of the date of this order, Robinson has been in pretrial detention for less than forty days. *See* ECF No. 176. Although any pretrial detention is a significant imposition on an individual's liberty interest,[15] forty days for a person deemed a danger to the community does not approach a length of detention sufficient to constitute a due process violation.[16]

---

[15] *See Holland v. Rosen*, 895 F.3d 272, 297 (3d Cir. 2018) ("Pretrial release and detention decisions implicate a liberty interest—conditional pretrial liberty—that is entitled to procedural due process protections. But 'not every potential loss of liberty requires the full panoply of procedural guarantees available at a criminal trial.'") (quoting *Delker*, 757 F.2d at 1397).

[16] *See United States v. Nikparvar-Fard*, Crim No. 18-101-1, 2022 WL 2974715, at *3 (E.D. Pa. July 26, 2022) (stating at 28-month pretrial detention "hover[s] at the outer limits of what is permissible under the due process clause."); *United States v. Crowder*, Crim No. 4:17-CR-00291-1, 2020 WL 1891878, at *9 (M.D. Pa. April

*United States v. Robinson*
Case No.: 3:21-cr-0027-001
Memorandum Opinion
Page 12 of 15

Even if the Court ignored the Third Circuit's directive in *Accetturo* by taking a prospective approach to the length of Robinson's pretrial detention and concluding his detention could realistically approach the outer limit of what is allowed under the due process clause, the remaining two due process considerations still do not support release. *See* 783 F.2d at 388.[17] Robinson's case has proven to be fairly complex as it involves a mix of difficult factual and legal questions.[18] Consequently, this complexity has delayed Robinson's trial date. (ECF Nos. 226 & 255.) While Robinson has claimed the Government intentionally created the complexity in this case, his claims are unsupported by the evidence presently before the Court.[19] Since, at this juncture, the record indicates that neither Robinson nor the Government contributed to the complexities in this case, the Court cannot attribute the

---

16, 2020) (determining that "32 months in pretrial detention is not, *per se*, a due process violation.") (citing *United States v. Thompson*, Crim No. 4:16-CR-0019-19, 2018 WL 2341713 (M.D. Pa. 2018)); *United States v. Jones*, 143 F. Supp. 3d 78 (W.D.N.Y. 2015) (collecting 2nd Circuit cases finding detentions exceeding 30 months do not violate the Due Process Clause); *United States v. Pirk*, 274 F. Supp. 3d 138, 149-50 (W.D.N.Y 2015) (Defendant's pretrial detention of approximately 22 months was not constitutionally excessive, as would violate his due process rights).

[17] The remaining two considerations in the Third Circuit's pretrial detention due process analysis are "the complexity of the case, and whether the strategy of one side or the other has added needlessly to that complexity." *Accetturo*, 783 F.2d at 388.

[18] At the original trial of Robinson and his codefendant, Trevor Stephen, the parties raised several issues that implicated conflicting constitutional rights of the defendants. Because of these unanticipated issues, the Court ultimately determined a mistrial was warranted in Robinson's case, thus extending his pretrial detention until at least November 27, 2023. (ECF Nos. 226 & 255.) The previously mentioned issues have led to Robinson's motion to dismiss on double jeopardy grounds which further complicated Robinson's case, and could therefore, result in further delays to the trial date. Robinson acknowledged as much by pointing out that he would likely appeal an unfavorable decision of his motion to dismiss to the Third Circuit and possibly even the Supreme Court. (ECF No. 229.)

[19] The Court recognizes that Robinson has made claims that the Government intentionally forced a mistrial in this case during Robinson's June 12th trial by prosecuting both Robinson and Trevor Stephen in a single trial despite knowing the serious constitutional conflicts that would likely arise as a result of the defendants' respective defenses. (ECF No. 255.) Although there could be a reasonable basis to believe that the Government needlessly added to the complexity and delays in this case if Robinson's allegations are true, there is no evidence to support Robinson's claims that the Government intentionally forced a mistrial. Robinson has merely made bare-bones conclusory statements regarding the Assistant United States Attorney's office's prior knowledge of the specific underlying factual and legal issues that led to a mistrial in Robinson's case. Since Robinson has yet to provide evidence that the Government knew about the issues that would arise during his previous trial, the Court cannot conclude that the Government intentionally forced a mistrial in this case. Since Robinson's claims are presently unsubstantiated by the record, the Court will not find that the Government has needlessly contributed to the complexity of this case or the resulting delay.

resulting delay to the Government. As such, Robinson's right to due process does not warrant release.

Robinson's final two arguments appear to rely on section 3142(i), the Bail Reform Act's safety valve provision, which states in pertinent part that "[t]he judicial officer may by subsequent order, permit the temporary release of the person . . . to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.SC. § 3142(i).[20]

The first of Robinson's two remaining arguments focuses on his need to prepare a defense. *See* ECF No. 229 at 6-7. Robinson contends that, as a *pro se* defendant, his pretrial detention will prevent him from conducting the legal research necessary to file his anticipated appeals and adequately prepare for trial due to the lack of legal resources available at the detention center in Guaynabo. *See id.* While the Court appreciates Robinson's concern, the Court is unable to identify any authority finding pretrial release is appropriate solely to allow a *pro se* defendant to better prepare his case. *See United States v. Kabbaj*, Crim No. 16-365, 2016 WL 11660082, at *9 (E.D. Pa. Sept. 12, 2016) (concluding the same as this Court).

Furthermore, the Court already addressed this specific concern at the revocation hearing when the Court appointed Robinson's standby counsel in this case. (ECF No. 175.) This arrangement has proven effective in ensuring that Robinson is able to adequately prepare for trial and file any motions or appeals he deems necessary. As such, the Court does not believe the need to prepare a defense justifies Robinson's release.

Finally, Robinson argues that his medical condition warrants his release. (ECF No. 229 at 7.) Robinson claims that he has a serious life-threatening pre-existing medical condition. Although Robinson does not provide the nature of his condition, he baldly asserts that the condition mandates treatment beyond the "'normal' in-house capabilities" of the detention center. *Id.* at 8.

---

[20] Although Robinson does not point to section 3142(i) as the statutory basis for relief, the Court presumes that he relies on this provision for his remaining two arguments as it is the only relevant statute providing the relief Robinson seeks.

For a Court to release a defendant from pretrial detention due to a medical condition, there must be a "compelling reason" to justify release. 18 U.S.C. § 3142(i). Accordingly, the federal courts have reiterated that section 3142(i) is to be used "'sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries.'" *United States v. Hadjiev*, 460 F. Supp. 3d 553, 556 (E.D. Pa. 2020) (quoting *United States v. Hamilton*, No. 19-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)). Robinson fails to show that such circumstances are present here.

Robinson elected not to provide the Court with any information, let alone medical documentation, regarding the nature of his condition.[21] Without even this basic information, the Court is unable to determine whether the detention center can provide Robinson with the medical treatment he needs without Robinson needing to leave the facility. The Court cannot merely take Robinson's conclusory statement that the health care resources available at the detention center in Guaynabo are inadequate.

Furthermore, even if staff at the detention center cannot treat Robinson's medical condition properly, Robinson proposes no arrangement that would ensure the community's safety if the Court were to allow Robinson temporary release to obtain treatment. *See United States v. Rosati*, Crim No. 11-329-2 2011 WL 5572617 at *5 (E.D. Pa. Nov. 16, 2011) (denying pretrial release for medical reasons, in part, because the defendant offered no condition of release that could effectively protect the community). Consequently, Robinson's final argument also does not support pretrial release.

## IV. CONCLUSION

Having evaluated the bases for Robinson's pretrial detention anew based on the present facts in this case, the Court finds that pretrial detention remains appropriate. Robinson offers no new or material information that would warrant altering the Court's previous detention order. Additionally, the length of Robinson's detention does not constitute a due process violation. Finally, neither Robinson's need to prepare a defense nor

---

[21] Robinson asserts that "[d]ue to HIPPA," he will not expound on the nature of his health condition other than that it is a serious medical condition. While the Court appreciates Robinson's desire to avoid disclosing the specifics of his personal medical issues, without such a disclosure, the Court lacks the ability to assess the severity of the condition to determine whether his problems are compelling enough to justify his release.

*United States v. Robinson*
Case No.: 3:21-cr-0027-001
Memorandum Opinion
Page 15 of 15

his medical condition provides a sufficient basis for temporary release under the safety valve provision set out in section 3142(i). Consequently, the Court will deny Robinson's motion without prejudice. An Order of even date follows.

**Dated:** July 12, 2023                                    /s/ *Robert A. Molloy*
                                                            **ROBERT A. MOLLOY**
                                                            **Chief Judge**