# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:21-cr-0027-001 |
| ) | |
| RUSSELL ROBINSON, ) | |
| ) | |
| Defendant. ) | |

**APPEARANCES:**

**DELIA L. SMITH, UNITED STATES ATTORNEY**
**KYLE PAYNE, ASSISTANT UNITED STATES ATTORNEY**
UNITED STATES ATTORNEY'S OFFICE
ST. THOMAS, U.S. VIRGIN ISLANDS
  *FOR THE UNITED STATES OF AMERICA*

**RUSSELL ROBINSON,** *PRO SE*
METROPOLITAN DETENTION CENTER - GUAYNABO
GUAYNABO, PUERTO RICO

## MEMORANDUM OPINION

**Robert A. Molloy, Chief Judge**

**BEFORE THE COURT** is the United States' ("Government") Motion to Quash Subpoenas. (ECF No. 330.) For the reasons stated below, the Court will grant the motion.

### I.   BACKGROUND

On December 17, 2021, a grand jury indicted Defendant Russell Robinson ("Robinson") and his codefendant, Trevor Stephen ("Stephen"), for possession with intent to distribute cocaine and conspiracy to do the same. (ECF No. 23.)[1] According to the Complaint, on the night of November 29, 2021, U.S. Customs and Border Protection agents observed a marine vessel operating without lights as the vessel approached Vessup Bay. *See* ECF No. 1. When the vessel arrived, several people were waiting on the beach. *See id.* The agents observed two individuals aboard the "lights out" vessel unloading several bags and handing

---

[1] The Superseding Indictment was filed on October 6, 2022. (ECF No. 92.)

them to the individuals on the beach, who then placed the bags into a Toyota Tundra pickup truck. *See id.* Once they had loaded the bags, the individuals on the beach left the area in the Toyota Tundra. *See id.* When the truck departed from the beach, the CBP agents initiated their pursuit to intercept the vehicle. During the pursuit, one of the individuals in the truck purportedly threw the bags out of the vehicle. *See id.* A short time later, the agents eventually stopped the truck, detained the occupants, and located the discarded bags containing a total of 210 kilograms of cocaine. *See id.* The driver of the vehicle was later identified as Defendant Russell Robinson, and the passenger was determined to be his codefendant, Trevor Stephen. *See* ECF No. 1.

On January 31, 2023, Robinson filed a motion to sever his case from Stephen's. (ECF No. 46.) The purported basis for the severance was that Attorney Melanie Turnbull, counsel for Robinson's codefendant, Trevor Stephen, had convinced Stephen "to change the facts as they happened (in an attempt to exonerate himself)." *Id.* According to Robinson, Attorney Turnbull negotiated an agreement with the Government that if Stephen were willing to implicate Robinson, Stephen would potentially receive "immunity, [a] change of identity, relocation for him and his family, [and] no deportation." *Id.* After reviewing Robinson's motion to sever, the Court ultimately denied his request, concluding that Robinson had failed to demonstrate a sufficient prejudice that was likely to occur as a result of the Government trying Robinson and Stephen jointly.[2] *See* ECF No. 132. As a result, the defendants went to trial together on June 12, 2023.

At trial, Robinson[3] asserted a duress defense wherein he claimed that both he and Stephen were forced by an unidentified third person to pick up the bags containing cocaine

---

[2] At the time the Court ruled on the motion to sever, Robinson did not state what he believed Stephen's affirmative defense would be, only that it would somehow implicate Robinson. Additionally, the Government indicated that it had no intention of using any statements made by Stephen against Robinson at their joint trial. Therefore, in addition to there being no *Bruton* issue, there was no colorable claim of the defendants having mutually antagonistic defenses that would warrant severance, especially given that, at that point, Trevor Stephen had made no indication he would be asserting an affirmative defense at all. Additionally, neither in his motion to sever nor during the status conferences on January 11, 2023, and February 17, 2023, did Robinson indicate that he intended to rely on Stephen's post-*Miranda* silence as exculpatory evidence. Accordingly, the Court would not have been able to grant Robinson's motion to sever on that ground either.

[3] At trial, Robinson represented himself *pro se* with the assistance of standby counsel, Attorney David Cattie.

*United States v. Robinson*
Case No.: 3:21-cr-0027-001
Memorandum Opinion
Page 3 of 10

from the marine vessel in Vessup Bay on the night of November 29, 2021. *See* ECF No. 286 at 31. According to Robinson, this third individual pointed a gun at the two defendants, forcing the men to commit the crime. *See id.* at 35. Stephen provided a distinctly different version of events.

Prior to the trial, Stephen's counsel had made no representations on the record that he intended to assert an affirmative defense in this case. *See* ECF No. 155.[4] During opening statements to the jury, however, Stephen's counsel stated for the first time that "you will learn that the gunman was Russell Robinson and the sole person acting under duress was Trevor Stephen." ECF No. 286 at 36. According to Stephen's telling, Robinson asked him to help pick up some boxes, but when Robinson and Stephen arrived at Vessup Beach, Robinson pulled a gun on Stephen and forced Stephen to assist in the criminal venture. As such, the defendants appeared to be presenting potentially mutually antagonistic defenses.[5]

To refute Stephen's defense during the trial, standby counsel for Robinson informed the Court that he intended to rely on both Stephen's pre-*Miranda* and post-*Miranda* silence to show that Stephen never indicated to anyone that Robinson had pulled a firearm on him despite having an opportunity to do so. Stephen's counsel objected, in part, on constitutional grounds. While the parties conceded that Robinson could rely on Stephen's pre-*Miranda* silence without issue, the Court noted that Robinson's use of Stephen's post-*Miranda* silence could implicate conflicting constitutional rights of the defendants.

After determining that the mutually antagonistic defenses by the defendants and Robinson's intention to use Stephen's post-*Miranda* silence could raise constitutional concerns, the Court and the parties discussed the possibilities of a mistrial. Robinson thereafter moved for a mistrial and a severance of his case from Stephen. While Stephen opposed the request for a mistrial, the Government did not. After carefully considering the

---

[4] In Stephen's Trial Brief, filed just ten days before trial, he indicated that he did "not anticipate any witnesses at th[at] time" nor did he "anticipate a defense case at th[at] time." ECF No. 154.

[5] During the trial, the prosecution represented to the Court that the Government had never been put on notice of Stephen's plan to assert a duress defense in this case. *See* ECF No. 286 at 24.

issues, the Court granted Robinson's motion for a mistrial, severed the case, and then proceeded with trial as to Trevor Stephen.[6] (ECF No. 226.)

Shortly after the Court ordered a mistrial, Robinson filed a motion to dismiss the charges in the Indictment on double jeopardy grounds. (ECF No 254.) In his motion, Robinson notes that the Double Jeopardy Clause bars prosecution of a defendant who successfully moves for a mistrial where the Government deliberately sought to provoke the defendant's request for a mistrial. *See id.* Robinson contends that those circumstances exist in this case. According to Robinson, the Government forced him to move for a mistrial because the Government "had an affirmative hand in the formulation of Stephen's opening argument" as well as the defense Stephen presented at trial. *Id.* Therefore, because the Government allegedly knowingly helped create the circumstances that led to Robinson's request for a mistrial, Robinson believes the Double Jeopardy Clause bars the Government from retrying his case.

In light of Robinson's argument, the Court determined that an evidentiary hearing was necessary to resolve the material facts in dispute. Accordingly, the Court issued an order scheduling a hearing on Robinson's motion to dismiss for October 26, 2023. (ECF No. 268.)

On August 23, 2023, the Court held a status conference to address several pending issues in this case. One such issue was Defendant Russell Robinson's request to subpoena *ad testificandum* certain witnesses for the hearing. Among the witnesses Robinson requested to subpoena were Special Agent Joseph Pittaluga and Assistant United States Attorney Kyle Payne, the attorney of record for the Government in this case. *See* ECF No. 274. On August 31, 2023, the Court granted Robinson's request, and subpoenas were issued to Agent Pittaluga and Attorney Payne accordingly. (ECF Nos. 296.) On September 14, 2023, the Government filed the instant motion to quash the subpoenas as to Agent Pittaluga and Attorney Payne. (ECF No. 355.) Robinson filed a response on September 21, 2023. (ECF No. 339.) The matter being fully briefed, is now properly before the Court.

## II. LEGAL STANDARD

---

[6] The jury ultimately found Stephen guilty of possession with intent to distribute cocaine. (ECF No. 244.)

Federal Rule of Criminal Procedure 17 governs subpoenas issued in criminal proceedings. *See* Fed. R. Crim. 17. Under Rule 17(a), a party is permitted to issue a subpoena *ad testificandum* "command[ing] a witness to attend and testify at the time and place the subpoena specifies." *Id.* While Rule 17(a), unlike Rule 17(c) (which governs subpoenas *duces tecum*), does not explicitly provide an individual the ability to quash a subpoena *ad testificandum*, motions to quash subpoenas *ad testificandum* and subpoenas *duces tecum* are subject to "roughly the same standard." *Stern v. U.S. Dist. Court for the Dist. Of Mass.*, 214 F.3d 4, 17 (1st Cir. 2000); *see United States v. Riego*, 627 F. Supp. 3d 1254, 1258 (D.N.M. 2022); *United States v. Goldstein*, No. 21 CR. 550 (DC), 2023 WL 3662971, at *5 (E.D.N.Y. May 25, 2023). Accordingly, a subpoena *ad testificandum* will generally survive a motion to quash so long as "the defendant seeks testimony that is relevant and material to the issue being litigated." *United States v. Bebris*, 4 F.4th 551, 559–60 (7th Cir.), *cert. denied*, 142 S. Ct. 489, 211 L. Ed. 2d 296 (2021) (citing *Stern*, 214 F.3d at 17); *see United States v. Santistevan*, No. 11-CR-00406-CMA, 2012 WL 2875949, at *1 (D. Colo. July 12, 2012); *see also United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) (implicitly adopting the material and relevant standard at least for a defendant seeking the appearance of a witness at trial) (quoting *Washington v. Texas*, 388 U.S. 14, 87 (1967)).

### III.   ANALYSIS

#### A. Subpoena Issued to Agent Joseph Pittaluga

The Court will begin by addressing the subpoena issued to Agent Joseph Pittaluga. With regard to Agent Pittaluga, the Government argues that the Court should quash the subpoena issued to him due to Robinson's failure to comply with the Department of Justice's ("DOJ") *Touhy* regulations.[7] *See* ECF No. 330 at 18. While the Court agrees that quashal of Pittaluga's subpoena is appropriate here, after further review, the Court finds that, as a

---

[7] *Touhy* regulations is common term referring to internal federal agency regulations generally enacted pursuant to the Federal Housekeeping Statute ("Housekeeping Act") 5 U.S.C. § 301, which govern the production of documents and testimony by agency officials and their staff for the purposes of litigation. Each federal agency generally has its own unique set of internal regulations setting out the requirements a party must comply with if the party seeks to obtain testimony or documents from an agency employee for the purposes of litigation. These internal subpoena regulations are often referred to as *Touhy* regulations because the Supreme Court first upheld the authority for similar regulations in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

preliminary matter, the subpoena fails to meet the material and relevancy requirements of Rule 17 and thus the Court need not reach the *Touhy* regulation issue.[8]

As Robinson stated on the record at the August 23, 2023 status conference, the only reason he is seeking to subpoena Agent Pittaluga is to ask Pittaluga about alleged statements his codefendant, Trevor Stephen, made moments prior to the December 3, 2021 bail hearing. *See* ECF No. 297 – Aug. 23, 20023 Hrn'g Tr. at 29-30. Specifically, Robinson intends to ask Agent Pittaluga whether he remembers hearing Trevor Stephen state to his defense attorney, Melanie Turnbull, "the guy had two guns; one to my head, one to Robinson[']s head." ECF No. 297 at 30. Robinson's proposed line of questioning, however, would neither be relevant nor material to the question at issue for the evidentiary hearing—did the Government intentionally provoke Robinson's motion for a mistrial by conspiring with Stephen and the Federal Public Defender's Office to formulate a duress defense. *See United States v. Brown*, 994 F.3d 147, 153 (3d Cir. 2021) (noting that the Double Jeopardy clause "bars a retrial for prosecutorial misconduct only if 'the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.'") (quoting *United States v. Curtis*, 683 F.2d 769, 776 (3d Cir. 1982)) (internal quotations and citations omitted). Even favorable testimony from Agent Pittaluga would not support Robinson's theory that the Government knew of or played an affirmative hand in establishing Stephen's defense. In fact, Pittaluga's testimony would not even suggest the Government had prior knowledge of Stephen's defense, let alone support the theory that the Government conspired with Stephen or defense counsel to alter Stephen's defense. At best, Agent Pittaluga's testimony could potentially demonstrate that Stephen's intended defense changed between the bail hearing and the start of trial eighteen months later. However, even if true, that fact is irrelevant for the sake of the evidentiary hearing since the testimony does not tend to show that the Government played a role in Stephen changing his defense.[9]

---

[8] While the Court initially concluded at the August 23rd status conference that Robinson was permitted to subpoena Agent Pittaluga, *see* ECF No. 296 and 297, upon the Government's motion to quash the subpoena, the Court reviewed Robinson's basis for the subpoena and ultimately determined that its earlier conclusion was in error.

[9] Robinson's theory as to the basis for his motion to dismiss on grounds of double jeopardy has shifted many times. First, as argued in his motion to dismiss, Robinson essentially argues that the Government and Stephen devised a plan "to falsely implicate Robinson in being the perpetrator of armed [d]uress towards Stephen." ECF

*United States v. Robinson*
Case No.: 3:21-cr-0027-001
Memorandum Opinion
Page 7 of 10

From the Court's estimation, Robinson's intended purpose in eliciting this testimony is merely to undermine the creditability of Stephen's duress defense and buttress Robinson's own theory that a third person coerced both defendants into carrying out the criminal enterprise. The veracity of Robinson's duress defense, however, is not at issue in the upcoming evidentiary hearing. Accordingly, the fact that Agent Pittaluga, or any member of the Government for that matter, may have heard Stephen make a statement inconsistent with the testimony he gave at the June trial is irrelevant for the purposes of this proceeding. Thus, seeing as the proposed testimony of Agent Pittaluga would be neither material nor relevant for the upcoming hearing, the Court will grant the Government's motion to quash as it relates to Agent Pittaluga's subpoena.

### B. Subpoena Issued to Assistant United States Attorney Kyle Payne

As for the subpoena issued to Attorney Payne, the Government offers two separate bases for quashal. Similar to Agent Pittaluga, the Government first argues that Robinson may not subpoena an Assistant United States Attorney without first complying with the Justice Department's *Touhy* regulations. *See* ECF No. 331. Because the Government claims Robinson has failed to satisfy the DOJ's regulatory requirements, the Government contends the Court may not enforce the subpoena issued to Attorney Payne. *See id.*

In addition to the regulatory bar purportedly created by the DOJ's *Touhy* regulations, the Government also argues that before a defendant may subpoena a prosecutor to testify in a case the prosecutor is participating in, the defendant must show a compelling need for the prosecutor to serve as a witness. *See id.* at 15. According to the Government, the compelling

---

No. 254 at 2. However, at the August 23, 2023 hearing and at other times during this case, Robinson sought to clarify his argument that he is entitled to a dismissal of his case because the Government knew that Stephen and his counsel would falsely implicate Robinson and the Government failed to investigate these alleged criminal acts. Robinson believes that Pittaluga's testimony would support his alternative theory that the Government provoked a mistrial by failing to adequately investigate the underlying factual basis of his motion to sever. This theory is clearly meritless because the Government had no duty to investigate the underlying conduct Robinson was alluding to in his motion to sever. *See Gratton v. Cochran*, No. 3:18-cv-00554, 2019 WL 13414467, at *3 (M.D. Tenn. Feb. 13, 2019) (noting that the duty to investigate wrongdoing by government officials is discretionary, not mandatory) (citing *Agunbiade v. United States*, 893 F. Supp. 160, 163 (E.D.N.Y. 1995)). Therefore, even if Robinson could proceed under his alternative theory, Pittaluga's testimony would not be material, seeing as a failure to investigate would not support the claim that the Government intentionally provoked Robinson to move for a mistrial.

need doctrine requires the defendant to exhaust all other available sources of evidence before calling on the participating prosecutor to testify. *See id.* at 16. In other words, the Government asserts that a participating prosecutor must be more than a material witness; the prosecutor must be a necessary witness in order to testify in his or her own case.

In light of this compelling need standard, the Government argues that Robinson has failed to carry his burden to subpoena Attorney Payne. The Government notes that, in essence, Robinson alleges that Attorney Payne, other members of the prosecution team, and attorneys from the Federal Public Defenders' Office worked together with Trevor Stephen to devise a plan in which Stephen would implicate Robinson at trial. Given the various individuals involved in this conspiracy, the Government argues that Robinson can obtain the relevant testimony from a source other than Attorney Payne. *See id.* at 17. The Government contends that since the attorneys from the Federal Public Defenders Office have also been subpoenaed in this case, Robinson can ask them whether they ever conspired with the Government or otherwise informed the prosecution of Stephen's affirmative defense prior to the June trial. With the testimony regarding the alleged conversations and wrongful conduct available from other witnesses, the Government asserts there is no compelling need to elicit testimony from Attorney Payne. Therefore, any testimony from the Assistant United States Attorney in this case should be barred.

The Government is correct that the Court may only permit Attorney Payne to testify if "extraordinary circumstances" exist and there is a "compelling and legitimate" need for his testimony. *United States v. Birdman*, 602 F.2d 547, 552-53 (3d Cir. 1979) (collecting cases); *United States v. Regan*, 103 F.3d 1072, 1083 (2nd Cir. 1997); *see United States v. Roberson*, 897 F.2d 1092, 1098 (11th Cir. 1990); *see also Gajewski v. United States*, 321 F.2d 261, 268 (8th Cir. 1963) ("[A] court may, without abusing its discretion, refuse to allow the defense to call as a witness the United States Attorney trying the case.") (citing *Fisher v. United States*, 231 F.2d 99, 104 (9th Cir. 1956)); *United States v. Newman*, 476 F.2d 733, (3d Cir. 1973) (finding defendant's request to call prosecutor was properly denied as irrelevant where there was "no evidence the prosecutor suppressed evidence" and "the prosecutor explicitly

*United States v. Robinson*
Case No.: 3:21-cr-0027-001
Memorandum Opinion
Page 9 of 10

denied to the court on the record, both as a member of the bar and as an officer of the court, making any bargains or agreements" with the witness.)

Since there is "no 'compelling need' to call the prosecuting attorney unless [he is] a 'necessary witness,'" Attorney Payne may only be required to testify if there is no other witness available to provide the testimony sought. *United States v. Prantil*, 764 F.2d 548, 551 (9th Cir. 1985) ("We recognize that a defendant has an obligation to exhaust other available sources of evidence before a court should sustain a defendant's efforts to call a participating prosecutor as a witness."); *Roberson*, 897 F.2d at 1098 (finding no compelling need for AUSA's testimony where other witnesses were available to testify); *United States v. Torres*, 503 F.2d 1120, 1126 (2nd Cir. 1974) (concluding AUSA should not have been permitted to testify where there was no showing that no other individuals were available to testify.).

In the present case, if the Government indeed worked with Trevor Stephen and the Federal Public Defender's Office to formulate an affirmative defense implicating Robinson, then there are necessarily sources other than Attorney Payne who can testify on the matter. The alleged wrongful conduct here involves a purported agreement and conversations between the Government, Stephen, and Stephen's defense team. Since Stephen's attorneys would have been party to any discussions with the Government regarding the agreement and the plan to formulate a defense, Stephen's attorneys are just as capable of providing testimony on the matter. Therefore, given that all three of Stephen's attorneys will be available to testify at the evidentiary hearing, Robinson has no basis to argue that there is a compelling and legitimate need for Attorney Payne's testimony.[10] As such, the Court will quash the subpoena issued to Attorney Payne and will not permit him to testify at the evidentiary hearing.[11]

### IV. CONCLUSION

---

[10] Although Stephen's attorneys' motion to quash Robinson's subpoenas remains outstanding, Stephen's attorneys have not challenged the subpoenas issued to them by the Government. Therefore, by all indications, Stephen's attorneys will be available to testify at the evidentiary hearing on October 26, 2023.

[11] Because the Court concludes there is an adequate basis to quash Attorney Payne's subpoena given the alternative available sources for the testimony sought, the Court will not address the *Touhy* regulation issue at this time.

*United States v. Robinson*
Case No.: 3:21-cr-0027-001
Memorandum Opinion
Page 10 of 10

      For the reasons stated, the Government's motion to quash both Agent Pittaluga's and Attorney Payne's subpoenas is granted. An accompanying order of even date will follow.

**Dated:** October 25, 2023                  */s/ Robert A. Molloy*
                                                                  **ROBERT A. MOLLOY**
                                                                  **Chief Judge**