**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:21-cr-0027-001 |
| ) | |
| RUSSELL ROBINSON, ) | |
| ) | |
| Defendant. ) | |

APPEARANCES:

**DELIA L. SMITH, UNITED STATES ATTORNEY**
**KYLE PAYNE, ASSISTANT UNITED STATES ATTORNEY**
UNITED STATES ATTORNEY'S OFFICE
ST. THOMAS, U.S. VIRGIN ISLANDS
    *FOR THE UNITED STATES OF AMERICA*

**RUSSELL ROBINSON,** *PRO SE*
METROPOLITAN DETENTION CENTER - GUAYNABO
GUAYNABO, PUERTO RICO


**BRIAN M. BOYNTON, PRINCIPAL DEPUTY ATTORNEY GENERAL**
**JACQUELINE COLEMAN SNEAD, ASSISTANT BRANCH MANAGER**
**JODY D. LOWENSTEIN, TRIAL ATTORNEY**
UNITED STATES DEPARTMENT OF JUSTICE
WASHINGTON, D.C.
    *FOR MATTHEW CAMPBELL, KIA SEARS, AND MELANIE TURNBULL*

## MEMORANDUM OPINION

**Robert A. Molloy, Chief Judge**

**BEFORE THE COURT** is Attorneys Matthew Campbell, Kia Sears, and Melanie Turnbull's (collectively, the "Federal Defenders") Motion to Quash Subpoenas. (ECF No. 355.) For the reasons stated below, the Federal Defenders' motion will be denied.

### I. FACTUAL BACKGROUND

On December 17, 2021, a grand jury indicted Defendant Russell Robinson ("Robinson") and his codefendant, Trevor Stephen ("Stephen"), for possession with intent to

distribute cocaine and conspiracy to do the same. (ECF No. 23.)[1] According to the Complaint, on the night of November 29, 2021, U.S. Customs and Border Protection agents observed a marine vessel operating without lights as the vessel approached Vessup Bay. *See* ECF No. 1. When the vessel arrived, several people were waiting on the beach. *See id.* The agents observed two individuals aboard the "lights out" vessel unloading several bags and handing them to the individuals on the beach, who then placed the bags into a Toyota Tundra pickup truck. *See id.* Once they had loaded the bags, the individuals on the beach left the area in the Toyota Tundra. *See id.* When the truck departed from the beach, the CBP agents initiated their pursuit to intercept the vehicle. During the pursuit, one of the individuals in the truck purportedly threw the bags out of the vehicle. *See id.* A short time later, the agents eventually stopped the truck, detained the occupants, and located the discarded bags containing a total of 210 kilograms of cocaine. *See id.* The driver of the vehicle was later identified as Defendant Russell Robinson, and the passenger was determined to be his codefendant, Trevor Stephen. *See* ECF No. 1.

On January 31, 2023, Robinson filed a motion to sever his case from Stephen's. (ECF No. 46.) The purported basis for the severance was that Attorney Melanie Turnbull, counsel for Robinson's codefendant, Trevor Stephen, had convinced Stephen "to change the facts as they happened (in an attempt to exonerate himself)." *Id.* According to Robinson, Attorney Turnbull negotiated an agreement with the Government that if Stephen were willing to implicate Robinson, Stephen would potentially receive "immunity, [a] change of identity, relocation for him and his family, [and] no deportation." *Id.* After reviewing Robinson's motion to sever, the Court ultimately denied his request, concluding that Robinson had failed to demonstrate a sufficient prejudice that was likely to occur as a result of the Government trying Robinson and Stephen jointly.[2] *See* ECF No. 132. As a result, the defendants went to trial together on June 12, 2023.

---

[1] A superseding Indictment was filed on October 6, 2022. (ECF No. 92.)

[2] At the time the Court ruled on the motion to sever, Robinson did not state what he believed Stephen's affirmative defense would be, only that it would somehow implicate Robinson. Additionally, the Government indicated that it had no intention of using any statements made by Stephen against Robinson at their joint trial. Therefore, in addition to there being no *Bruton* issue, there was no colorable claim of the defendants having mutually antagonistic defenses that would warrant severance, especially given that, at that point, Trevor

*United States v. Robinson*
Case No.: 3:21-cr-0027-001
Memorandum Opinion
Page 3 of 16

At trial, Robinson[3] asserted a duress defense wherein he claimed that both he and Stephen were forced by an unidentified third person to pick up the bags containing cocaine from the marine vessel in Vessup Bay on the night of November 29, 2021. According to Robinson, this third individual pointed a gun at the two defendants, forcing the men to commit the crime. Stephen provided a distinctly different version of events.

Prior to the trial, Stephen's counsel had made no representations on the record that he intended to assert an affirmative defense in this case. In fact, Stephen's stated in his Trial Brief – submitted just 10 days before trial – that he did not anticipate calling any witnesses nor did he "anticipate a defense case at th[at] time." ECF No. 154. During opening statements, however, Stephen's counsel stated for the first time that "you will learn that the gunman was Russell Robinson and the sole person acting under duress was Trevor Stephen." According to Stephen's telling, Robinson asked him to help pick up some boxes, but when Robinson and Stephen arrived at Vessup Beach, Robinson pulled a gun on Stephen and forced Stephen to assist in the criminal venture. As such, the defendants appeared to be presenting potentially mutually antagonistic defenses.[4]

To refute Stephen's defense during the trial, standby counsel for Robinson informed the Court that he intended to rely on both Stephen's pre-*Miranda* and post-*Miranda* silence to show that Stephen never indicated to anyone that Robinson had pulled a firearm on him. Stephen's counsel objected, in part, on constitutional grounds. While the parties conceded that Robinson could rely on Stephen's pre-*Miranda* silence without issue, the Court noted that Robinson's use of Stephen's post-*Miranda* silence could implicate conflicting constitutional rights of the defendants.[5]

---

Stephen had made no indication he would be asserting an affirmative defense at all. Additionally, neither in his motion to sever nor during the status conferences on January 11, 2023, and February 17, 2023, did Robinson indicate that he intended to rely on Stephen's post-*Miranda* silence as exculpatory evidence. Accordingly, the Court would not have been able to grant Robinson's motion to sever on that ground either.

[3] At trial, Robinson represented himself *pro se* with the assistance of standby counsel, Attorney David Cattie.

[4] During the trial, the prosecution represented to the Court that the Government had never been put on notice of Stephen's plan to assert a duress defense in this case. *See* ECF No. 286 at 24.

[5] Stephen's post-Miranda's right to remain silent, *see Doyle v. Ohio*, 426 U.S. 610 (1976), versus Robinson's Sixth Amendment right to confrontation. *See Crawford v. Washington*, 541 U.S. 36 (2004).

After determining that the mutually antagonistic defenses by the defendants and Robinson's intention to use Stephen's post-*Miranda* silence could raise constitutional concerns, the Court and the parties discussed the possibilities of a mistrial. Robinson thereafter moved for a mistrial and a severance of his case from Stephen. While Stephen opposed the request for a mistrial, The Government did not. After carefully considering the issues, the Court granted Robinson's motion for a mistrial, severed the case, and then proceeded with trial as to Trevor Stephen.[6] (ECF No. 226.)

Shortly after the Court ordered a mistrial, Robinson filed a motion to dismiss the charges in the Indictment on double jeopardy grounds. (ECF No 254.) In his motion, Robinson notes that the Double Jeopardy Clause bars prosecution of a defendant who successfully moves for a mistrial where the Government deliberately sought to provoke the defendant's request for a mistrial. *See id.* Robinson contends that those circumstances exist in this case. According to Robinson, the Government forced him to move for a mistrial because the Government "had an affirmative hand in the formulation of Stephen's opening argument" as well as the defense Stephen presented at trial. *Id.* Therefore, because the Government allegedly knowingly helped create the circumstances that led to Robinson's request for a mistrial, Robinson believes the Double Jeopardy Clause bars the Government from retrying his case.

In light of Robinson's argument, the Court determined that an evidentiary hearing was necessary to resolve the material facts in dispute. Accordingly, the Court issued an order scheduling a hearing on Robinson's motion to dismiss for October 26, 2023. (ECF No. 268.)

On August 23, 2023, the Court held a status conference to address several pending issues in this case. One such issue was Defendant Russell Robinson's ("Robinson") request to subpoena *ad testificandum* certain witnesses for the hearing. Among the witnesses Robinson intended to subpoena were three members of the Federal Public Defenders Office—Attorney Matthew Campbell, Attorney Kia Sears, and Attorney Melanie Turnbull. (ECF No. 274.) On August 31, 2023, the Court granted Robinson's request, and subpoenas were issued to all three attorneys. (ECF Nos. 296 and 355.) The Federal Defenders responded

---

[6] The jury ultimately found Stephen guilty of possession with intent to distribute cocaine. (ECF No. 244.)

by filing a motion to quash on October 3, 2023. (ECF No. 355.) The Court denied the motion on October 10, 2023, because the Federal Defenders failed to properly serve the motion on Robinson in accordance with Rule 49 of the Federal Rules of Civil Procedure. (ECF No. 364.)[7] After the Court denied the initial motion, the Federal Defenders filed the instant motion to quash the next day. (ECF No. 368.) Both the initial motion and the instant motion to quash lay out the same arguments. The Federal Defenders argue that the Court should quash the subpoenas issued to Attorney Campbell, Attorney Sears, and Attorney Turnbull pursuant to the federal judiciary's internal regulations regarding subpoenas as well as several other substantive concerns. *See id.*

Pursuant to 28 U.S.C. §§ 602 604, the Director of the Administrative Office of the United States Courts has promulgated regulations that govern how the testimony and production of records by federal judiciary employees shall be produced in response to a subpoena.[8] These regulations apply to all members of the federal judiciary, including the Federal Public Defender's Office. *See Guide to the Judiciary Policy,* Vol. 20, Chap. 8, §§ 810, 840.

The Federal Defenders assert that under the federal judiciary's subpoena regulations, before a member of the federal judiciary is compelled to testify in relation to legal proceedings, the party seeking such testimony must first comply with the internal regulations. *See* ECF No. 368. Relevant in this case are the following requirements:

> The request for testimony…must be accompanied by an affidavit setting forth, a written statement by the party seeking the testimony… containing—
>
> [1] an explanation of the nature of the testimony or records sought,
>
> [2] the relevance of the testimony or records sought to the legal proceedings, and

---

[7] The Federal Defenders' filing did not indicate whether it served Robinson with a copy of the motion.

[8] While the Federal Defenders state the Judicial Conference promulgates the federal judiciary regulations, that assertion is incorrect. The regulations clearly state the Director of the Administrative Office promulgated the subpoena regulations. Moreover, the statutory authority relied on to enact these regulations states that it is indeed the Director who is responsible for promulgating such regulations. *See* 28 U.S.C. § 604(f).

> [3] the reasons why the testimony or records sought, or the information contained therein, are not readily available from other sources or by other means.

*See Guide to the Judiciary Policy*, Vol. 20, Chap. 8, § 830(a). Additionally, the "explanation must contain sufficient information for the determining officer designated in § 840(b) to determine whether or not federal judicial personnel should be allowed to testify…" *Id.* Under the judiciary's regulations, if the requesting party fails to satisfy any of these requirements, the department head may preclude the employee who received the subpoena from testifying. *See id.*

According to the Federal Defenders, compliance with these regulations may not be excused because although the federal judiciary's subpoena regulations were established pursuant to a different statute, the Federal Defenders argue the regulations at issue here are akin to the executive branches' so-called *Touhy* regulations. *See* ECF No. 368. Under the federal courts' *Touhy* line of cases, a federal court is generally prohibited from compelling testimony from a federal agency employee if the requesting party's subpoena fails to comply with the agency's internal regulations regarding requests for testimony.

Here, the Federal Defenders assert that the subpoenas they received did not come with an accompanying affidavit that sets forth the nature of the testimony sought, the relevancy of the testimony, or the reasons the testimony could not be obtained from another source. Therefore, the subpoenas fail to comply with the regulations. Accordingly, because the *Touhy* line of cases mandates compliance with the judiciary's regulations and the regulations dictate that a requesting party must satisfy all the requirements before a court may compel a federal judiciary employee to testify, the Federal Defenders conclude that Robinson's non-compliance with the regulations is a sufficient basis, alone, to quash their subpoenas.

Additionally, even if Robinson's non-compliance with the judiciary's regulations is not enough to quash the subpoenas, the Federal Defenders argue there are also substantive concerns with their potential testimony. Their main concern is that the Federal Defenders currently represent Robinson's former codefendant, Trevor Stephen, in post-trial litigation. Therefore, compelling any testimony from the Federal Defenders, all of whom have served

as Trevor Stephen's attorney, could implicate Stephen's Fifth Amendment right against self-incrimination, his Sixth Amendment right to the effective assistance of counsel, the attorney-client privilege, the work-product privilege, as well as the ethical duties of confidentiality generally owed to a client. Given these risks, the Federal Defenders argue that without advanced knowledge as to the scope of Robinson's examination, they may not be able to effectively assert the appropriate privileges, which could result in the Federal Defenders providing testimony that would undermine or at least hinder their ability to represent their client.

The Federal Defenders also argue that even if constitutional or ethical concerns are not implicated by their potential testimony, the lack of clarity as to the scope of Robinson's examination should still prohibit him from compelling Attorney Campbell, Attorney Sears, and Attorney Turnbull to testify. The Federal Defenders note that Robinson is not permitted to engage in a fishing expedition during his examination of the witnesses, but without a clear indication of the scope of Robinson's inquiry, the Federal Defenders believe there will be no bounds to the questions Robinson is permitted to ask.

Lastly, the Federal Defenders claim that irrespective of the above-mentioned concerns, the Federal Defenders are prohibited by statute from testifying because Matthew Campbell, the Federal Public Defender, and determining officer, "declined to authorize the Federal Defenders to testify in this matter in accordance with the judiciary's regulations." Therefore, because the judiciary's regulations state that a member of the federal judiciary may only testify if authorized by a department head, compelling the Federal Defenders' testimony would run contrary to federal law.

Robinson, on the other hand, does not believe any of the Federal Defenders' arguments warrant quashing the subpoenas. *See* ECF No. 366. Robinson notes that although rules are generally expected to be adhered to, they should not be imposed at the expense of common sense. *See id.* According to Robinson, requiring strict compliance with the judiciary's regulations would be particularly unjust because to do so would prevent Robinson from uncovering the alleged criminal conspiracy between the United States Attorney's Office, the Federal Public Defender's Office, and Trevor Stephen. Robinson also

argues that notwithstanding the matter at issue, imposing such highly technical regulations would be fundamentally unfair given that Robinson is presently incarcerated and representing himself *pro se*. See id.

## II.     LEGAL STANDARD

Federal Rule of Criminal Procedure 17 governs subpoenas issued in criminal proceedings. *See* Fed. R. Crim. 17. Under Rule 17(a), a party is permitted to issue a subpoena *ad testificandum* "command[ing] a witness to attend and testify at the time and place the subpoena specifies." *Id.* While Rule 17(a), unlike Rule 17(c) (which governs subpoenas *duces tecum*), does not explicitly provide an individual the ability to quash a subpoena *ad testificandum*, motions to quash subpoenas *ad testificandum* and subpoenas *duces tecum* are subject to "roughly the same standard." *Stern v. U.S. Dist. Court for the Dist. Of Mass.*, 214 F.3d 4, 17 (1st Cir. 2000); *see United States v. Riego*, 627 F. Supp. 3d 1254, 1258 (D.N.M. 2022); *United States v. Goldstein*, No. 21 CR. 550 (DC), 2023 WL 3662971, at *5 (E.D.N.Y. May 25, 2023).[9] Accordingly, a subpoena *ad testificandum* will generally survive a motion to quash so long as "the defendant seeks testimony that is relevant and material to the issue being litigated." *United States v. Bebris*, 4 F.4th 551, 559–60 (7th Cir.), cert. denied, 142 S. Ct. 489, 211 L. Ed. 2d 296 (2021) (citing *Stern*, 214 F.3d at 17); *See United States v. Santistevan*, No. 11-CR-00406-CMA, 2012 WL 2875949, at *1 (D. Colo. July 12, 2012); *see also United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) (implicitly adopting the material and relevant standard at least for a defendant seeking the appearance of a witness at trial) (quoting *Washington v. Texas*, 388 U.S. 14, 87 (1967)). The burden to show the materiality and relevance of a prospective witness's testimony is a low one, and the Court's judgment on the matter is afforded considerable discretion. *See United States v. Riego*, 627 F. Supp. 3d 1254, 1258 (D.N.M. 2022) (citation omitted); *United States v. Hamdan*, 910 F.3d 351, 356 (7th Cir. 2018); *United States v. Moore*, 917 F.2d 215, 230 (6th Cir. 1990); *Taylor v. United States*, 329 F.2d 384, 386 (5th Cir. 1964) ("District courts have wide discretion to determine which

---

[9] Under Rule 17, the subpoenaed party may file a motion to quash even if the individual is not a party to the case. *See Khouj v. Darui*, 248 F.R.D. 729 (D.D.C. 2008).

witnesses requested by an indigent defendant should be subpoenaed at government expense and its decision will not be disturbed except in cases of clear abuse.").

Furthermore, not only is the burden to overcome a motion to quash low, "the quashing of a subpoena is an extraordinary measure, and is usually inappropriate absent extraordinary circumstances." *Flanagan v. Wyndham Intern. Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005) (citing, among others, *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir.1979)). As such, "a court should loathe to quash a subpoena if other protection of less absolute character is possible." *Flanagan*, 231 F.R.D. at 102.

### III.   DISCUSSION

When considering the Rule 17 standard here, the Court finds that Robinson has carried his burden to show that the testimony sought from the Federal Defenders is both material and relevant to the upcoming evidentiary proceeding. The aim of this hearing is to determine whether the Government ultimately sought to create the circumstances that forced Robinson to move for a mistrial in the initial trial. Robinson contends that this standard was met because the prosecution, members of the Federal Public Defender's Office, and Trevor Stephen conspired to formulate Stephen's affirmative defense in this case. If the Federal Defenders provide testimony that they did discuss Stephen's defense with the prosecution, that would certainly be relevant, given that part of the basis for the mistrial was the defendants' mutually antagonistic defenses. Testimony that the Government discussed and helped determine Stephen's defense would certainly tend to support the proposition that the Government knowingly avoided severing the case despite their prior awareness of each of the Defendants' theories. Such testimony would also be material because the testimony that Robinson seeks would tend to support a claim that double jeopardy has now attached to the charges against him—a dispositive issue in this case. Accordingly, the Court believes the Rule 17 standard is met.[10]

Despite Robinson seemingly satisfying Rule 17, as noted above, the Federal Defenders still believe that the subpoenas should be quashed due to Robinson's failure to provide an accompanying written affidavit setting out the nature, the relevancy, and the need for the

---

[10] The Court will address the Federal Defenders' specific argument related to Rule 17 later in this opinion.

testimony sought as required by the federal judiciary regulations regarding subpoenas. The Federal Defenders asserts that, just like in the *Touhy* regulations context, compliance with the federal judiciary's regulations is a mandatory prerequisite before an individual may compel a judicial employee to testify.

Although the Court acknowledges the Federal Defenders' argument, given that Robinson is an incarcerated defendant representing himself *pro se*, the Court will excuse his failure to comply with the judiciary's subpoena regulations here. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) ("[w]e tend to be flexible when applying procedural rules to pro se litigants."); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) (insisting that filings by "prisoners who do not have access to counsel be liberally construed" while also noting that "some procedural rules must give way because of the unique circumstances of incarceration") (citations omitted). The Court does not believe it would be appropriate under the circumstances to require strict compliance with the judiciary's subpoena regulations, especially because to do so would be to place substance over form. The Federal Defenders claim mandatory compliance with the subpoena regulations is necessary because, without the required information set out in those regulations, the determining officer is unable to decide whether the testimony Robinson seeks is privileged, confidential, or otherwise not able to be disclosed. *See* ECF No. 369 at 9-10. In other words, the Federal Defenders acknowledge the reason for these regulations, at bottom, is to ensure the appropriate officer receives the information he needs to decide how he or his subordinates will respond to a litigant's subpoena. *See id.*

Given the intended purpose, strict enforcement of the judiciary's subpoena regulations is generally necessary because the determining officer lacks any familiarity with the litigation or the potential scope of the requesting party's inquiry. When the determining officer receives the subpoena, that may be the first time he or she has even heard about the case. Consequently, without an affidavit providing details about the case and the nature of the testimony sought, the determining officer would lack sufficient information to decide whether his staff should disclose information, invoke a privilege, or not testify at all.

Here, however, strict adherence to the judiciary's subpoena regulations is unnecessary because the determining officer has had the requisite information to determine the Federal Public Defender's Office's response well in advance of the upcoming evidentiary hearing. As counsel for Robinson's codefendant, Attorney Campbell is intimately familiar with not only the facts of this case, but the nature of the testimony Robinson seeks to elicit from the Federal Defenders. On several occasions, in court filings and on the record, Robinson has made clear that he intends to examine the Federal Defenders to determine whether they ever negotiated an agreement with the Government on Trevor Stephen's behalf wherein Stephen would fabricate testimony implicating Robinson in exchange for the Government providing Stephen immunity.[11] As noted earlier, the record is also clear regarding how the Federal Defenders' testimony is relevant to the instant criminal proceedings. If any of the Federal Defenders testify that they conspired with the Government to formulate Stephen's affirmative defense in the first trial, the testimony would tend to prove Robinson's theory that the prosecution knowingly created the circumstances that forced Robinson to move for a mistrial during those proceedings.

Finally, Robinson has also explained why the testimony sought is not readily available from other sources or by other means. Only two other parties are likely to have first-hand knowledge of the alleged conspiracy to fabricate Stephen's defense. The first is, of course, Trevor Stephen. Although Stephen would certainly have knowledge of discussions between the Federal Defenders and the Government, Robinson has previously explained that if such a conspiracy did exist, Stephen would likely assert his Fifth Amendment right to remain silent, thus preventing Robinson from eliciting the testimony sought. While the prosecutor in this case is also a potential source, the Court has already determined that Assistant United States Attorney Kyle Payne is prohibited from being subpoenaed at this juncture. Therefore, the only individuals left capable of providing the potential testimony are the Federal Defenders.

---

[11] While Robinson may have discussed a possible alternative theory during the August 23, 2023 status conference, the Court made clear that it would not allow Robinson to pursue a theory different than the one originally alleged. Therefore, the Federal Defenders cannot argue that Robinson's examination will veer off or turn into a fishing expedition since the Court has already established clear boundaries for the scope of Robinson's examination during the evidentiary hearing.

Given that all this information is in the record and the determining officer in this instance is familiar with the record due to his role as an attorney in these proceedings, the Court believes that Attorney Campbell had the requisite information to make a determination about how to respond to Robinson's subpoena without the need for an accompanying affidavit. Accordingly, there is no need for Robinson, an incarcerated defendant representing himself *pro se*, to comply with the federal judiciary's highly technical regulation in order to compel the testimony of the Federal Defenders under these circumstances.

The Federal Defenders argue that even if the Court determines that the regulations should not be strictly enforced under the present circumstances, there are still sufficient substantive concerns that warrant quashing their subpoenas. The Federal Defenders note that, as counsel for Trevor Stephen, any testimony regarding their representation of Stephen prior to and during the first trial could implicate the attorney-client privilege, work product doctrine, rules of ethics, as well as Stephen's Fifth and Sixth Amendment rights. While such privileges and constitutional rights may prevent the Federal Defenders from providing certain testimony, these concerns do not warrant quashing their subpoenas entirely.[12] The Federal Defenders may, of course, invoke any appropriate privilege during the course of Robinson's examination; however, they are still obligated to answer Robinson's questions as to matters that are relevant and not privileged. *See United States v. Goodwin*, 625 F.2d 693,

---

[12] For instance, the attorney-client privilege would not cover conversations the Federal Defenders had with government officials on Stephen's behalf, nor would the privilege cover the Federal Defenders' conversations with Stephen that were later disclosed to the Government or another third party. *See Diamond Resorts U.S. Collections Dev., LLC v. U.S. Consumer Attorney*, P.A., 519 F. Supp. 3d 1184, 1198-99 (S.D. Fla. 2021); *AHF Community Dev., LLC v. City of Dallas*, 258 F.R.D. 143, 148 (N.D. Dal. 2009). Additionally, the work-product doctrine and Stephen's Fifth Amendment privilege against self-incrimination would have little relevance where Robinson's is merely seeking testimony from Stephen's counsel. *See United States v. Nobles*, 422 U.S. 225, n.12 (1975); *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414 (3d Cir. 1991); *see also Matter of Grand Jury Empanelled Feb. 14, 1978*, 603 F.2d 469, 472 n.3 (3d Cir. 1979) (As to the client's Fifth Amendment privilege, "an attorney may not refuse to testify by vicariously asserting his client's privilege against compelled self-incrimination.") (quoting *Fisher v. United States*, 425 U.S. 391, 396-402 (1976)); *In re Grand Jury Subpoenas*, 144 F.3d 653, 663 (10th Cir. 1998). Furthermore, neither the Virgin Islands rules of ethics nor Stephen's Sixth Amendment right to counsel establish an absolute privilege that would allow the Federal Defenders to avoid testifying regarding the representation of a client. *See* V.I. Sup. Ct. R. 211.1.6 (permitting attorney to disclose confidential information related to the representation of a client pursuant to a court order); *In re Grand Jury Subpoenas*, 906 F.2d 1485, 1493-94 (10th Cir. 1990*); In re Grand Jury Subpoena for Att'y Representing Crim. Defendant Reyes-Requena*, 913 F.2d 1118, 1129-30 (5th Cir. 1990).

701 (5th Cir. 1980) (noting that the Fifth Amendment privilege against self-incrimination will only permit a witness to be excused "if the court finds that he could legitimately refuse to answer essentially all relevant questions.") (citations omitted); *Goldstein v. F.D.I.C.*, 494 B.R. 82, 90 (D.D.C. 2013) (noting that privileges such as the attorney-client privilege are "not a proper ground for quashing the subpoena ad testificandum, but rather a reason for objecting to certain questions on a case by case basis, as questions implicating privileged conversations arise."). Accordingly, while the Federal Defenders' concerns may have merit, the privileges referred to are not so far-reaching that they relieve the Federal Defenders of the duty to testify at all.

      Lastly, the Federal Defenders argue that even if the Court is not persuaded by any of the challenges made up to this point, the Court cannot compel the Federal Defender's testimony because Attorney Campbell, the determining officer, has not authorized them to testify in this case. According to the Federal Defenders, since the judiciary regulations provide that the federal judicial personnel shall not comply with a court order to testify unless directed by the determining officer to do so, mandating compliance with the subpoena would be contrary to federal law and, therefore unreasonable within the meaning of Rule 17(c). In effect, the Federal Defenders contend that the federal judiciary's regulations have empowered the determining officer to be the conclusive authority on what testimony and records he and his subordinates must produce in response to a federal court subpoena.

      While courts have yet to consider the validity of this claim concerning federal judicial regulations, similar arguments have been made in the context of federal agency *Touhy* regulations. In those cases, Courts have repeatedly explained that *Touhy* regulations do not create a privilege that the agency can assert. Instead, the regulations merely establish the process for subpoenaing federal employees. To conclude that internal housekeeping regulations provide agency officials with the authority to conclusively determine what testimony should be produced would impermissibly infringe on the judicial branches' powers under Article III.[13] *United States v. Reynolds*, 345 U.S. 1, 9–10, 73 S.Ct. 528, 532–33,

---

[13] The dissent by Judge Norris in *In re Boeh*, aptly explains the limit of the Supreme Court's holding in *Touhy* and why the Supreme Court's decision in that case does not support the proposition that agency official can withhold employee testimony entirely. "*Touhy* did not hold that the Attorney General can arrogate to himself

97 L.Ed. 727 (1953) ("judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers."); *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 778–79 (9th Cir. 1994) ("We decline to hold that federal courts cannot compel federal officers to give factual testimony."); *In re Boeh*, 25 F.3d 761, 769 (9th Cir. 1994) (dissenting); *U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am.*, 474 F. Supp. 2d 75, 80 (D.D.C. 2007) ("there is no authority indicating that HHS can block *all* testimony by a[n] employee as to that individual's personal opinions and observations, absent the assertion of a specific privilege.") (citations omitted); *Liptak v. Cnty.*, No. CV 16-225 (ADM/JSM), 2016 WL 5662082, at *8 (D. Minn. Aug. 24, 2016) (explaining that "the Housekeeping Act did not permit a federal regulation to override application of the Federal Rules of Civil Procedure and, in essence, divest a court of jurisdiction over discovery."). The argument that the courts maintain the ultimate authority to compel testimony despite the existence of contrary subpoena regulations is even stronger in the context of federal judicial regulations, seeing as the entity who promulgated the judicial regulations lacks the same constitutional standing as the head of an executive agency. Simply put, agency regulations cannot be construed to frustrate a trial court's fact-finding function in making the appropriate record.

The federal judicial regulations at issue here were promulgated by the Director of the Administrative Office of the United States Courts ("AO"). *See Guide to the Judiciary Policy,* Vol. 20, Chap. 8, §§ 810.20[14]  "The AO was created to perform, and historically has performed, a

---

the authority to override the subpoena power of Article III courts by withholding evidence within his administrative control. *Touhy* instead held that the Attorney General may, 'as a matter of internal administration,' *Touhy*, 340 U.S. at 471, 71 S.Ct. at 421 (Frankfurter, J., concurring), promulgate regulations under the housekeeping statute designating which agency personnel are authorized to produce agency records. If an agency head withholds from subordinates' authority to produce documents that have been subpoenaed, as the Attorney General did in *Touhy*, the agency head himself may still be subpoenaed. Because *Touhy* left undecided the question whether the Attorney General himself could lawfully refuse to obey a court order to produce the documents, *Touhy*, 340 U.S. at 467, 71 S.Ct. at 418–19, *see also id.* at 472, 71 S.Ct. at 421 (Frankfurter, J., concurring), it left intact the judicial power to subpoena evidence, whether documentary or testimonial, that the courts determine is needed to decide cases. Just as *Touhy* did not decide whether 'it is permissible for the Attorney General to make a conclusive determination not to produce records,' *id.* at 467, 71 S.Ct. at 418–19, it did not decide whether the Attorney General could make a conclusive determination not to allow the testimony of a subordinate." 25 F.3d 761, 769 (9th Cir. 1994).

[14] The regulations themselves state that "these regulations are promulgated under the authority granted the Director of the Administrative Office of the U.S. Courts." *See Guide to the Judiciary Policy*, Vol. 20, Chap. 8, §§

limited ministerial function" throughout its existence. *Tashima v. Admin. Off. of U.S. Cts.*, 967 F.2d 1264, 1271 (9th Cir. 1992); *see also Mistretta v. United States*, 488 U.S. 361, 388 n.15 (1989) ("[T]he Administrative Office of the United States Courts handles the administrative and personnel matters of the courts."). Rather than acting as an Article III entity, the AO is an adjunct that lacks the power vested in the federal courts. *See Tashima*, 967 F.2d at 1269 (noting that "the AO is not an Article III entity, but rather a 'non-Article III' adjunct"). As Justice Harlan explained—

> The role of the Administrative Office, and its Director, was to be 'administrative' in the *narrowest sense of that term*. The Director was entrusted with no authority over the performance of judicial business—his role with respect to such business was, and is, merely to collect information for use by the courts themselves.[15]

*Chandler v. Jud. Council of Tenth Cir. of U.S.*, 398 U.S. 74, 102 (1970) (emphasis added). Therefore, given the exceptionally limited authority conferred to the Director of the AO, it would be quite astonishing indeed to conclude that the head of the Administrative Office maintains the authority to exercise judicial powers to such an extent that the Director or the subordinate department heads could conclusively determine whether an individual is permitted to testify in a federal criminal proceeding. "To grant such power to an administrative officer 'would be to destroy the very fundamentals of our theory of government.'" *Chandler*, 398 U.S. 74, at 102 (1970) (Harlan, J., concurring) (quoting Hearings on S. 188 before a Subcommittee of the Senate Committee on the Judiciary, 76th Cong., 1st Sess., 12 (1939) (responding to a question by Senator Hatch)). Accordingly, to the extent the federal regulations conflict with the Court's power to compel testimony in a federal judicial

---

810.20. Additionally, the regulations state that the Authority to "make" and "promulgate" these regulations derives from the authority Congress provided under 28 U.S.C. § 604(f). *See id.* Section 604(f) states in pertinent part that "[t]he *Director* may make, promulgate, issue, rescind, and amend rules and regulations (including regulations prescribing standards of conduct for Administrative Office employees) as may be necessary to carry out the *Director's* functions, powers, duties, and authority." 28 U.S.C. § 604(f) (emphasis added). Therefore, the lawfulness of the subpoena regulations is dependent on the Director of the AO's authority to promulgate this type of regulation not the Judicial Conference's authority.

[15] As the district court in *United States v. McDougal* asserted, this quotation by Justice Harlan "speaks volumes in describing the tasks conferred on the Administrative Office under the statutory provision creating the Administrative Office." 906 F. Supp. 494, 498 (E.D. Ark. 1995).

*United States v. Robinson*
Case No.: 3:21-cr-0027-001
Memorandum Opinion
Page 16 of 16

proceeding, the Court finds that the regulations exceed the authority conferred upon the Administrative Office by Congress. Consequently, since the Court has concluded that enforcing the subpoenas against the Federal Defenders would not be contrary to a lawfully promulgated regulation or any other federal law, the Court does not believe, as the Federal Defenders suggest, that enforcing the subpoenas would run afoul of Rule 17.

## IV.  CONCLUSION

For the reasons stated, the Federal Defenders' motion to quash the subpoenas issued to Matthew Campbell, Kia Sears, and Melanie Turnbull is denied. An accompanying order of even date will follow.

**Dated:** October 25, 2023                          */s/ Robert A. Molloy*
                                                     **ROBERT A. MOLLOY**
                                                     **Chief Judge**