**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**RUSSELL ROBINSON,** )<br>)<br>**Defendant.** ) | Case No. 3:21-cr-0027-001 |

APPEARANCES:

**DELIA L. SMITH, UNITED STATES ATTORNEY**
**KYLE PAYNE, ASSISTANT UNITED STATES ATTORNEY**
UNITED STATES ATTORNEY'S OFFICE
ST. THOMAS, U.S. VIRGIN ISLANDS
  *FOR THE UNITED STATES OF AMERICA*

**RUSSELL ROBINSON,** *PRO SE*
METROPOLITAN DETENTION CENTER - GUAYNABO
GUAYNABO, PUERTO RICO

## MEMORANDUM OPINION

**Robert A. Molloy, Chief Judge**

  **BEFORE THE COURT** is Defendant Russell Robinson's ("Robinson") *Motion to Dismiss Case with Prejudice Due to Double Jeopardy Bar to Reprosecution/Retrial*, filed on July 6, 2023. (ECF No. 253.) For the reasons stated below, the Court will deny the motion.

### I. BACKGROUND

  The Court has issued several opinions detailing the factual background of this case, nevertheless; the Court will recite only those facts necessary for a disposition of the motion. On December 17, 2021, a grand jury indicted Robinson and his codefendant, Trevor Stephen ("Stephen"), for possession with intent to distribute cocaine and conspiracy to do the same. (ECF No. 23.)[1] According to the Complaint, on the night of November 29, 2021, U.S. Customs and Border Protection ("CBP") agents observed a marine vessel operating without lights as

---

[1] The Superseding Indictment was filed on October 6, 2022. (ECF No. 92.)

*United States v. Robinson*
Case No.: 3:21-cr-0027-001
Memorandum Opinion
Page 2 of 16

the vessel approached Vessup Bay. *See* ECF No. 1. When the vessel arrived, several people were waiting on the beach. *See id.* The agents observed two individuals aboard the "lights out" vessel unloading several bags and handing them to the individuals on the beach, who then placed the bags into a Toyota Tundra pickup truck. *See id.* Once they had loaded the bags, the individuals on the beach left the area in the Toyota Tundra. *See id.* When the truck departed from the beach, the CBP agents initiated their pursuit to intercept the vehicle. During the pursuit, one of the individuals in the truck purportedly threw the bags out of the vehicle. *See id.* A short time later, the agents eventually stopped the truck, detained the occupants, and located the discarded bags containing a total of 210 kilograms of cocaine. *See id.* The driver of the vehicle was later identified as Defendant Russell Robinson, and the passenger was determined to be his codefendant, Stephen. *See* ECF No. 1.

On January 31, 2022, Robinson filed a motion to sever his case from Stephen's. (ECF No. 46.) The purported basis for the severance was that Assistant Federal Public Defender Melanie Turnbull, counsel for Stephen, had convinced Stephen "to change the facts as they happened (in an attempt to exonerate himself)." *Id.* According to Robinson, Attorney Turnbull negotiated an agreement with the Government that if Stephen were willing to implicate Robinson, Stephen would potentially receive "immunity, [a] change of identity, relocation for him and his family, [and] no deportation." *Id.* After reviewing Robinson's motion to sever and giving due consideration to the arguments of the parties, the Court ultimately denied his request, concluding that Robinson had failed to demonstrate a sufficient prejudice that was likely to result from the Government trying Robinson and Stephen jointly.[2] *See* ECF No. 132. Consequently, the defendants went to trial together on June 12, 2023.

---

[2] When the Court ruled on the pretrial motion to sever, Robinson did not state what he believed Stephen's affirmative defense would be, only that it would somehow implicate Robinson. *See* ECF No. 46. Since Robinson did not know the specific nature of Stephen's defense, and at that point, Stephen had made no indication he would even be presenting an affirmative defense, there was no pretrial justification for the Court to sever the case based on the defendants' purported mutually antagonistic defenses or for any other reason.

Additionally, while Robinson argued that an alternative basis for severance was his inability to elicit testimony from his codefendant, given that his codefendant would likely invoke his Fifth Amendment right against self-incrimination, the Court rejected this argument as well since a defendant generally has no right to compel a codefendant to testify whether or not the defendants' cases are severed. *See United States v. Barber*, 442 F.2d

*United States v. Robinson*
Case No.: 3:21-cr-0027-001
Memorandum Opinion
Page 3 of 16

At trial, Robinson[3] asserted a duress defense wherein he claimed that both he and Stephen were forced by an unidentified third person to pick up the bags of cocaine in Vessup Bay on the night of November 29, 2021. *See* ECF No. 286 at 31. According to Robinson, this third individual pointed a gun at both defendants, forcing the men to carry out the drug trafficking crime. *See id.* at 35. Stephen, on the other hand, provided a distinctly different version of events.

Prior to the June trial, Stephen's counsel had made no representations on the record that he intended to assert an affirmative defense in this case. *See* ECF No. 154.[4] During opening statements to the jury, however, Stephen's counsel stated for the first time that "you will learn that the gunman was Russell Robinson and the sole person acting under duress was Trevor Stephen." ECF No. 286 at 36. According to Stephen's telling, Robinson asked him to help pick up some boxes, but when Robinson and Stephen arrived at Vessup Beach, Robinson pulled a gun on Stephen and forced Stephen to assist in the criminal venture. *See id.* at 37-38. In light of Stephen's opening statements, the defendants appeared to be presenting potentially mutually antagonistic defenses.[5]

To refute Stephen's affirmative defense, standby counsel for Robinson informed the Court that he intended to rely on both Stephen's pre-*Miranda* and post-*Miranda* silence to

---

517, 529 (3d Cir. 1971). Furthermore, the Government indicated that it had no intention of using any statements made by Stephen against Robinson at their joint trial. Therefore, no *Bruton* issue was at play either. *See Bruton v. United States*, 391 U.S. 123, 137 (1968). Accordingly, since Robinson did not inform the Court that he intended to rely on Stephen's post-*Miranda* silence as exculpatory evidence until after the trial commenced, the Court lacked any pretrial basis to sever the case based on the conflicting constitutional rights of the defendants.

[3] At trial, Robinson represented himself *pro se* with the assistance of standby counsel, Attorney David Cattie, who at times also served as hybrid counsel.

[4] In Stephen's Trial Brief, filed just ten days before trial, he indicated that he did "not anticipate any witnesses at th[at] time" nor did he "anticipate a defense case at th[at] time." ECF No. 154; *see also* ECF 286 at 244, 253 (noting that the Court was learning about Stephen's duress defense for the first time at trial). During the trial, the prosecution also represented to the Court that the Government had never been notified of Stephen's plan to assert a duress defense in this case. *See* ECF No. 286 at 288. Counsel for Stephen, however, conceded during trial, that in order for Stephen to present evidence of his duress defense, he would necessarily have to testify.

[5] Mutually antagonistic defenses exist "'when acquittal of one codefendant would necessarily call for the conviction of the other.'" *United States v. Voigt*, 89 F.3d 1050, 1094 (3d Cir. 1996) (quoting *United States v. Tootick*, 952 F.2d 1078, 1081 (9th Cir. 1991)).

*United States v. Robinson*
Case No.: 3:21-cr-0027-001
Memorandum Opinion
Page 4 of 16

show that Stephen never indicated to anyone that Robinson had pulled a firearm on him despite having an opportunity to do so.[6] Stephen's counsel objected, in part, on constitutional grounds. While the parties conceded that Robinson could rely on Stephen's pre-*Miranda* silence without issue, the Court noted that Robinson's use of Stephen's post-*Miranda* silence could implicate conflicting constitutional rights of the defendants.[7]

After determining that Robinson's intention to use Stephen's post-*Miranda* silence and the defendants' potentially antagonistic defenses could raise constitutional concerns, the Court and the parties discussed the possibilities of a mistrial. *See* ECF No. 287. Robinson thereafter moved for a mistrial and severance of his case from Stephen's. Stephen opposed Robinson's motion for a mistrial, but the Government did not. *See id.* at 58. After carefully considering the issues raised and the constitutional rights implicated, the Court granted Robinson's motion for a mistrial and severed the case. The Court then proceeded with trial only as to Stephen.[8] (ECF No. 226.) The jury ultimately found Stephen guilty of possession with intent to distribute cocaine. (ECF No. 244.)

---

[6] At this point in the trial, Attorney Cattie acted as Robinson's Attorney, serving in a hybrid counsel role.

[7] The rights in conflict were Stephen's post-*Miranda* right to remain silent, *see Doyle v. Ohio*, 426 U.S. 610 (1976), versus Robinson's Sixth Amendment right to confrontation and his right to present exculpatory evidence as a part of a complete defense. *See Crawford v. Washington*, 541 U.S. 36 (2004) (right to confrontation); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (right to a complete defense); *Taylor v. Illinois*, 484 U.S. 400, 410-411 (noting the right to present relevant exculpatory evidence). Courts have concluded that when these rights conflict because one defendant is prejudiced by the inability to comment on his or her codefendant's silence, severance is warranted. *See, e.g., De Luna v. United States*, 308 F.2d 140, 141 (5th Cir. 1962); *United States v. Carrasquillo*, 3:20-CR-00100 (KAD), 2021 WL 3292649, at *5 (D. Conn. Aug. 2, 2021).

[8] Robinson seems to either misremember or intentionally misrepresent what transpired during the deliberations regarding whether the Court should grant a mistrial and sever one of the defendants from the case. In his motion to dismiss, Robinson claims the Court did not consider severing Stephen from the case and proceeding with Robinson's trial. *See* ECF No. 254 at 3. This assertion, however, is incorrect. The Court expressly discussed this possibility with Robinson and his standby counsel, Attorney Cattie. Robinson allowed Attorney Cattie to address whether the Court should sever Stephen from the case and proceed with just Robinson. *See* ECF No. 287 at 56-57 (noting that Robinson expressly authorized Attorney Cattie to represent him on the motion for mistrial and severance). Attorney Cattie stated that such an approach would not be possible because if the Court did declare a mistrial, he did not "feel there is any way that Mr. Robinson could go forth before this jury." *Id.* at 42, 44. (Attorney Cattie) (stating "I think severance is mandatory, Your Honor."). Therefore, despite Robinson's characterization of events, the Court respected the wishes of both defendants by granting Robinson's request for a mistrial and severance, and granting Stephen's request to continue with his trial.

Shortly after the Court ordered a mistrial, Robinson filed the instant motion to dismiss the charges in the Indictment on double jeopardy grounds. (ECF No 253.) In his motion, Robinson notes that the Double Jeopardy Clause bars prosecution of a defendant who successfully moves for a mistrial if the defendant was provoked into moving for the mistrial. *See* ECF No. 254. Robinson contends such circumstances exist in this case. According to Robinson, the prosecution intentionally forced him to move for a mistrial because the prosecution "had an affirmative hand" in the formulation of Stephen's defense yet opposed Robinson's pretrial motion for severance despite the prosecution's awareness of Robinson and Stephen's mutually antagonistic defenses. *Id.* at 6. Therefore, because the prosecution prevented Robinson from severing his case before trial, notwithstanding their knowledge of the conflicting defenses, Robinson claims the prosecution left him with no choice but to move for a mistrial. Since Robinson believes that the prosecution's goal in creating the circumstances that led to a mistrial was for the Government to have a test run of the trial, he argues that the Double Jeopardy Clause necessarily precludes the Government from reprosecuting his case. *See id.*

In addition to the alleged prosecutorial misconduct, Robinson also argues that the Court's misconduct serves as another basis to preclude reprosecution. *See id.* Robinson claims that this Court denied his pretrial motion to sever in bad faith by ruling on the motion without first holding an evidentiary hearing to investigate the validity of his claims and the alleged misconduct. *See id.* at 3-4. Accordingly, because the Court prevented Robinson from severing the case prior to trial, he contends the Court effectively forced him to move for a mistrial in this case.

The Government filed a response to Robinson's motion to dismiss on September 7, 2023. (ECF No. 318.) The Government maintains that no secret agreements or conspiracy existed between government officials, Stephen, or Stephen's attorneys to formulate a defense implicating Robinson. *Id.* According to the Government, the prosecution was unaware of Stephen's affirmative defense until Stephen's attorneys made their opening argument. *See* ECF No. 318; *see also* ECF No. 286 at 288. Therefore, given the prosecution's

lack of knowledge of Stephen's defense, the Government believes it did not commit an error by failing to sever the defendants' cases prior to the start of trial. *See* ECF No. 318 at 10-11.

Moreover, even assuming the prosecutors participated in formulating Stephen's defense, the Government argues that there is no evidence that the prosecution intended for the conduct to provoke a mistrial. *See id.* at 12. According to the Government, there is no evidence that the prosecutors wanted a mistrial, nor is there any reasonable explanation for why provoking a mistrial pretrial would have been beneficial to the Government, especially since, prior to trial, there was no indication that Robinson's conviction was unlikely. *See id.* at 12-13. While Robinson contradicts the assertion that there was no motive for a mistrial by claiming the prosecution's purpose for provoking a mistrial was to have a test run of the case, the Government argues that Robinson's pretrial sabotage theory is implausible. *See* ECF No. 254 at 6 and ECF No. 318 at 14. The Government asserts that Robinson has more to gain from a retrial than the Government since Robinson will now have a better chance of being able to impeach government witnesses while the Government's evidence will virtually remain the same. *See* ECF No. 318 at 13-14.[9] Therefore, in sum, the Government believes there is no evidence of prosecutorial misconduct, no evidence that the Government intended to provoke a mistrial, and no plausible reason why the Government would try to provoke a mistrial before the trial even began.

Regarding Robinson's allegation of judicial misconduct, the Government contends the claim fails on its face. *See id.* at 16-17. The Government notes that even assuming the Court

---

[9] The Government suggests that Robinson's motion may also claim that Stephen's or his attorneys' misconduct could trigger the double jeopardy bar to reprosecution in this case. *See* ECF No. 318 at 15-16. To the extent that Robinson does make such an argument, the Government contends that double jeopardy may only attach to a case resulting in a mistrial if the misconduct at issue is prosecutorial or judicial in nature. According to the Government, neither misconduct by Robinson's codefendant nor his attorneys in the Federal Public Defender's office can serve as a basis to apply the *Kennedy* exception to the mistrial rule here. *See id.* (citing *Oregon v. Kennedy*, 456 U.S. 673 (1982)). While the Court does not believe that Robinson made such an argument in his motion to dismiss, to the extent that he did, the Court agrees that the caselaw is clear that only judicial or prosecutorial misconduct may serve as a bar to reprosecution in circumstances where the defendant successfully moves for a mistrial. Misconduct by a codefendant or his counsel alone is insufficient to prohibit retrying a case. *See United States v. Pascual-Pichardo*, Crim. Act. No. 011–001, 2013 WL 845093, at *5 (D.V.I. Mar. 7, 2013) ("When, as here, a defendant has 'succeeded in aborting [a trial]' on his own mistrial motion, the Double Jeopardy Clause of the Fifth Amendment of the U.S. Constitution bars retrial '[o]nly where the *governmental conduct* in question is intended to 'goad' the defendant into moving for a mistrial.'") (quoting *Kennedy*, 456 U.S. at 676) (emphasis added).

acted in bad faith by denying Robinson's pretrial motion to sever, Robinson makes no allegation that the undersigned intended to provoke a mistrial. *See id.* Since intent to cause a mistrial is an essential element necessary for judicial misconduct to bar reprosecution, Robinson's claim is demonstrably deficient.

Due to the parties' competing version of events, the Court determined that an evidentiary hearing was necessary to resolve the material facts in dispute. Accordingly, the Court issued an order scheduling a hearing on Robinson's motion to dismiss for October 26, 2023. (ECF No. 268.) During the evidentiary hearing, Robinson provided three affidavits and called seven witnesses.[10] The witnesses included all three of the Federal Public Defenders, as well as Ikysha James ("James") and Nadine Francis ("Francis"), who both purportedly received third-hand accounts of the discussions between the prosecution, Stephen, and the Federal Public Defenders. The two remaining witnesses were Robinson and Luther Seraphin ("Seraphin"), both of whom merely echoed the testimony of James and Francis.[11]

After thoroughly reviewing the record and the evidence produced at the hearing, the Court concluded that Robinson failed to show that government officials intentionally provoked him to move for a mistrial. Therefore, double jeopardy did not create a bar to reprosecution. As a result, the Court denied Robinson's motion to dismiss the Indictment and informed the parties that it would memorialize its decision in writing. The Court will now provide its explanation for the decision herein.

## II.    LEGAL STANDARD

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause has been understood to "protect[] a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense." *United States v. Dinitz*, 424 U.S. 600, 606 (1976). While the Double Jeopardy Clause prohibits

---

[10] All three affidavits were from witnesses who testified at the October 26, 2023, evidentiary hearing. The first exhibit was Robinson's affidavit, the second was Ikysha James', and the third affidavit came from Nadine Francis. The affidavits admitted at trial were the same ones filed by Robinson at ECF No. 340.

[11] Robinson indicated that the purpose of his and Seraphin's testimonies was merely to show that James' and Francis's testimonies at the evidentiary hearing were consistent with what the two women told Robinson and Seraphin during a conversation the four witnesses had in late December of 2021 or early January of 2022.

the Government from reprosecuting an individual for the same criminal offense, the constitutional prohibition is not absolute. *See United States v. Brown*, 994 F.3d 147, 151 (3d Cir. 2021); *Love v. Morton*, 112 F.3d 131, 133 (3d Cir. 1997) (noting that "the Supreme Court has crafted certain exceptions to the literal language of the Clause."). For instance, double jeopardy does not attach when a defendant either requests or consents to a mistrial. *See Lee v. United States*, 432 U.S. 23, 32 (1977); *Morton*, 112 F.3d at 133 ("Mistrials declared with the defendants' consent do not bar a later prosecution.") (citing *Dinitz*, 424 U.S. at 607). Therefore, so long as the defendant "exercise[s] his choice in favor of terminating the trial, the Double Jeopardy Clause generally w[ill] not stand in the way of reprosecution." *Lee*, 432, U.S. at 32-33.

The mistrial rule, however, is not without its own exceptions. As the Supreme Court explained in *Oregon v. Kennedy*, double jeopardy will still attach if governmental officials intentionally provoke the defendant into requesting a mistrial. *See* 456 U.S. 667, 673, 674 (1982).[12] While under *Kennedy*, governmental misconduct may serve as a bar to the reprosecution of a defendant, the circumstances in which the *Kennedy* exception applies are exceedingly narrow. *See Brown*, 994 F.3d at 152; *Kennedy*, 456 U.S. at 673 (noting the exception is "narrow").

Mere recklessness or negligent governmental conduct will not preclude the prosecution from retrying the case. *See United States v. Leppo*, 641 F.2d 149, 152 (3d Cir. 1981); *see also Wallace v. Price*, Civ. Act. No. 99–231, 2002 WL 31180963, at * 74 (W.D. Pa. Oct. 1, 2002) (noting that the *Kennedy* "standard requires more than just prosecutorial overreaching that violates the due process clause").[13] The governmental conduct must

---

[12] While the *Kennedy* decision focused on prosecutorial misconduct, the Third Circuit has since determined that the "intentionally provoked standard" applies to judicial misconduct as well. *See United States v. Pharis*, 298 F.3d 228, 243 (3d Cir. 2002), *as amended* (Sept. 30, 2002) (citing *Dinitz*, 424 U.S. at 606-12); *United States v. Dinzey*, 259 Fed. App'x 509, 510 (3d Cir. 2007).

[13] "The United States Supreme Court has held consistently that the standard to be applied in determining whether the Double Jeopardy Clause bars a retrial after a defendant seeks and obtains a mistrial is not gross negligence or recklessness but, rather, whether the Government 'intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions'" *Leppo*, 641 F.2d at 152 (quoting *Dinitz*, 424 U.S. at 611).

deliberately "goad" the defendant into moving for a mistrial. *See United States v. Williams*, 472 F.3d 81, 85 (3d Cir. 2007). In other words, the mere fact that a governmental error caused a mistrial is insufficient to bar reprosecution. The defendant must prove that the government official deliberately sought to provoke the defendant's mistrial request. *See Kennedy*, 456 U.S. at 679; *Brown*, 994 F.3d at 153; *Leppo*, 641 F.2d at 152-153.

Additionally, the Third Circuit has also made clear that under the *Kennedy* standard, even if the defendant is able to show that the conduct causing the mistrial was deliberate and intended to harass or prejudice the defendant, jeopardy will still not attach unless the defendant can show that government official specifically intended to provoke a mistrial. *See United States v. Curtis*, 683 F.2d 769, 774 (3d Cir. 1982). Intent, therefore, is key. *Brown*, 994 F.3d at 153; *United States v. Williams*, 472 F.3d 81, 86 (3d Cir. 2007) (explaining under *Kennedy* and its Third Circuit progeny, "application of the double jeopardy bar is dependent on a showing of the prosecutor's subjective intent to cause a mistrial in order to retry the case.").[14] Thus, for the *Kennedy* exception to apply, the defendant must show that (1) the governmental official committed the error that caused the mistrial, and (2) that the governmental official specifically intended to cause mistrial, as opposed to some other prejudicial harm. *See Brown*, 994 F.3d at 153 (concluding that *Kennedy* only bars reprosecution where "'the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial'") (quoting *Curtis*, 683 F.2d at 776). Absent such a showing, the prosecution will be free to retry a defendant following his or her successful request for a mistrial.

### III. ANALYSIS

After careful review of the record and the testimony presented at the evidentiary hearing, the Court finds that Robinson has failed to demonstrate that governmental misconduct caused the mistrial, let alone provoked Robinson to move for a mistrial.

---

[14] When considering whether a governmental official had sufficient intent to cause a mistrial, the Third Circuit considers the following factors: "(1) whether the record contains any indication that the prosecutor [or judge] believed the defendant would be acquitted; (2) whether a second trial would be desirable for the government; and (3) whether the prosecutor justified his remarks to the trial court." *United States v. Barnard*, 318 Fed. App'x 143, 145 (3d Cir. 2009) (citing *Curtis*, 653 F.2d at 777-78).

There were two potential bases for mistrial in this case: (1) the defendants' conflicting constitutional rights implicated by Robinson's intent to rely on Stephen's post-*Miranda* silence, and (2) the codefendants' mutually antagonistic defenses. The Court, however, ultimately found only the former supported granting a mistrial in this case. *See* ECF No. 287 at 59-61. Nevertheless, since Robinson's motion seems to presuppose that the Court relied on the defendants' potentially mutually antagonistic defenses in ordering the mistrial, the Court will address why, under either basis for the mistrial, double jeopardy does not attach.

**A. No Governmental Conduct Provoked nor Intended to Provoke Robinson to Move for a Mistrial by Intentionally Placing the Codefendants' Constitutional Rights in Conflict.**

The Court will begin by first analyzing the circumstances that it concluded caused the mistrial—the conflict between Robinson's Sixth Amendment right to a complete defense and confrontation and Stephen's implicit Fifth Amendment Right to not have his post-*Miranda* silence used against him. Although Robinson's instant motion does not appear to specifically argue that any governmental official created the circumstances that led to Robinson and Stephen's Fifth and Sixth Amendment rights coming into conflict, Robinson has made arguments involving this issue in previous proceedings. *See*, *e.g.*, ECF No. 297 at 39-43. Therefore, to the extent Robinson's motion implicitly argues that any governmental conduct was intended to create the constitutional conflict that arose, the Court will explain why the argument fails.

Previously, Robinson has argued that the prosecution or the Court could have prevented Stephen and Robinson's constitutional rights from conflicting if the Government had not opposed, and the Court had ultimately granted, his pretrial motion to sever. Robinson has indicated that his pretrial motion informed the Court that his right to confrontation would be denied if the Court allowed the Government to try him and Stephen jointly. However, the prospective harm that Robinson raised in his motion to sever regarding conflicting constitutional rights was entirely different than the issue that arose at trial. More importantly, the concerns Robinson raised in his initial motion to sever did not amount to conflicting constitutional rights.

In his pretrial motion, Robinson claimed that if he and Stephen were tried together, his Sixth Amendment right to confrontation would be violated since he would be precluded from eliciting testimony from Stephen if Stephen were to refuse to take the stand. *See* ECF No. 46 at 4-5 and ECF No. 282 at 18. However, regardless of whether the case was severed or not, Robinson had no right to compel favorable testimony from a codefendant, and therefore, there was no evidence at that time that Robinson's Sixth Amendment right of confrontation was at risk. *See Diggs v. Owens*, 833 F.2d 439, 444 (3d Cir. 1987) ("[A] defendant's Sixth Amendment right of compulsory process gives way when a witness he has subpoenaed invokes his Fifth Amendment privilege against self-incrimination."); *United States v. Barber*, 442 F.2d 517, 529 n. 22 (3d Cir. 1971) ("It would appear axiomatic that the constitutional right of a defendant not to testify at the behest of a co-defendant remains his right despite the severance of their trials.").[15] Accordingly, when Robinson made his pretrial motion to sever, there were no conflicting constitutional rights that would justify severing the case.[16]

The defendants' competing rights only became an issue when, at trial, Robinson indicated, for the first time, his intent to use Stephen's post-*Miranda* silence to rebut Stephen's defense. At that point, Robinson's Sixth Amendment right to present a complete defense and right to cross-examination were at risk of being unfairly prejudiced by Stephen's right not to have his post-*Miranda* silence used against him during the trial. *See United States v. Addonizio*, 451 F.2d 49, 63 (3d Cir. 1971) (explaining the circumstances when a conflict between the right to silence and the right to present a complete defense warrant severing the defendants in the case). Robinson did not provide any notice before trial that he intended

---

[15] As the Court has previously explained, there was no *Bruton* issue at play when Robinson made his pretrial motion to sever either. *See supra* note 2. The Government did not intend to use any statements made by Stephen against Robinson. *See* ECF No. 282. Therefore, when Robinson made his pretrial motion to sever, there was no indication that Robinson's right of confrontation was at risk of being violated if the defendants went to trial together.

[16] The Court notes there is a presumption against severing codefendants who have been charged in the same conspiracy. *See Zafiro v. United States*, 506 U.S. 534 537 (1993); *Voigt*, 89 F.3d at 1094; *United States v. Foxworth*, Crim. Act. No. 14-540, 2019 WL 454426, at *3 (E.D. Pa. Feb. 4, 2019). As such, Robinson was not entitled to severance absent a showing of a "serious risk that a joint trial would compromise a specific trial of one of the defendants...." *Voigt*, 89 F.3d at 1094.

to use Stephen's post-*Miranda* silence as a part of his defense.[17] Thus, no one besides Robinson could have foreseen that this particular constitutional conflict would arise. Neither the Court nor the prosecution could have intentionally caused the circumstances that led to the mistrial because there was no reasonable action the prosecution or the Court could have taken to resolve the issue in advance. As such, no governmental conduct surrounding the constitutional conflict issue can serve as a bar to reprosecution. *See Williams*, 472 F.3d at 86 (explaining that the governmental actor must knowingly introduce the error for the *Kennedy* exception to apply) (citing *United States v. Gilmore*, 454 F.3d 724, 729-30 (7th Cir. 2006)).

**B. No Governmental Conduct Provoked nor was Intended to Provoke Robinson to Move for a Mistrial by Knowingly Forcing the Codefendants to Proceed to Trial with Mutually Antagonistic Defenses.**

**1. No Prosecutorial Misconduct**

The Court will now address the core argument in Robinson's instant motion to dismiss.[18] Robinson's main argument involves the Government and the Court's conduct related to the codefendant's purported antagonistic defenses. As to the Government, Robinson alleges that the prosecution worked with Stephen and his attorneys to formulate an affirmative defense for Stephen that was mutually antagonistic to Robinson's defense. *See* ECF no. 254 at 6, 9. Therefore, because the prosecution allegedly played an affirmative hand in determining Stephen's defense and opposing Robinson's pretrial motion for severance,

---

[17] Robinson claims that he knew as far back as January 2021 that Stephen intended to present a defense that would implicate him. If that is indeed true, then Robinson had more than sufficient time to indicate to the Court that he intended to use Stephen's post-*Miranda* silence to rebut Stephen's defense if he had wished to do so.

[18] Robinson makes an additional argument regarding the prosecution's conduct at trial that the Court can quickly dispose of here. Robinson tries to make much to do about the Government's choice not to move for a mistrial, but instead, allow Robinson to move for the mistrial without governmental opposition. Robinson contends that the Government cannot avoid the Double Jeopardy Clause's prohibition against reprosecution by simply letting Robinson be the one who procedurally moved for the mistrial despite the Government's "covert" support for the motion. Robinson argues that such "legal gamesmanship" should not allow the Government to avoid the Double Jeopardy clause's bar against reprosecution. Robinson, however, misunderstands the issue. In the Third Circuit, reprosecution is permitted when a defendant moves for a mistrial *"or when a defendant consents to a mistrial." Brown*, 994 F.3d at 152. (emphasis added) (citing *United States v. Kennings*, 861 F.2d 381 385 (3d Cir. 1988)). Therefore, the relevant inquiry, for all practical purposes, is not who moved for the mistrial, but rather whether Robinson legitimately consented to a mistrial. Since Robinson requested the mistrial, there is no question as to his consent, and thus, his only theoretical avenue to preventing reprosecution is through the narrow exception set out in *Kennedy*.

*United States v. Robinson*
Case No.: 3:21-cr-0027-001
Memorandum Opinion
Page 13 of 16

Robinson claims that the prosecution intentionally forced him to move for a mistrial by knowingly trying Robinson and Stephen jointly despite the prosecution knowledge of the codefendants' competing defenses. *See id.*

As a preliminary matter, the undersigned takes a moment to reiterate that the Court ultimately concluded that the codefendants' purported mutually antagonistic defenses did not serve as a basis for the mistrial in this case. *See* ECF No. 287 at 59- 61.  Accordingly, since Robinson and Stephen's defenses did not cause the mistrial, any evidence of governmental misconduct intending to make Robinson and Stephen's defenses mutually antagonistic does not establish proof that the *Kennedy* exception applies. *Curtis*, 683 F.2d at 776 (explaining that the governmental misconduct must give rise to the defendant's successful motion for mistrial); *Government of Virgin Islands v. Scuito*, 623 F.2d 869, 872 (3d Cir. 1980) ("[R]etrial is barred only when the circumstances causing the mistrial are 'are attributable to prosecutorial or judicial overreaching.'") (quoting *Dinitz*, 424 U.S. at 607).

However, even assuming *arguendo* that the Court concluded the antagonistic nature of the defenses warranted a mistrial, there is virtually no support for Robinson's claim that the prosecution collaborated with Stephen and the Federal Public Defender's Office to formulate Stephen's defense. At trial, Assistant United States Attorneys Kyle Payne and Adam Sleeper represented that the Government had never received prior notice of Stephen's intent to assert a duress defense. *See* ECF Nos. 286 at 288 and 287 at 36. Additionally, during the evidentiary hearing, all three of Stephen's attorneys testified that they had never disclosed Stephen's duress defense to any member of the Government prior to the start of trial.[19] Robinson also did not elicit any compelling documentary or testimonial evidence to the contrary.

The only witnesses who offered a conflicting account were four individuals who admitted they had no firsthand knowledge of any alleged communications between the Federal Public Defenders and the prosecution, and who had never personally communicated

---

[19] Attorney Matthew Campbell, Stephen's lead attorney at the June trial also stated during the trial that "Mr. Stephen has not, is not[,] and will not be cooperating with the government." (ECF No. 287 at 30.)

with any of the alleged conspirators.[20] Francis and James both essentially testified that Trevor Stephen's girlfriend, Celena Hodge, had told the two of them that Stephen had been directed by "his attorneys, [the] agents, and [the] prosecutor" to go along with a story that would implicate Robinson.[21] In exchange, Stephen would receive immunity. Robinson's two other witnesses, Seraphin and himself, merely reiterated what James and Francis had heard from Celena Hodge. Given the vague nature of the testimony and the multiple levels of hearsay, the Court gives little credibility to the third and fourth-hand accounts of the alleged conversations between Robinson's codefendant, the Federal Public Defender's Office, and the prosecution.[22] Accordingly, after weighing the evidence, the Court finds that the facts presented do not support the claim that the prosecution knew of Stephen's defense prior to trial, and therefore, the Court cannot conclude that the prosecution created the circumstances that caused the mistrial.[23]

Even construing James, Francis, Seraphin, and Robinson's testimony in the most favorable light possible, their testimony still fails to show that the prosecution specifically engaged in wrongful conduct with the deliberate goal of provoking a mistrial. *See Brown*, 994 F.3d at 154 (emphasizing that a showing of "intent to provoke a mistrial" is essential for the

---

[20] When the Court refers to conspirators, it is referring to individuals Robinson alleges colluded to formulate Trevor Stephen's defense—i.e., the prosecutors, the government agents, the Federal Public Defenders, and Stephen himself.

[21] The quoted language comes from James' affidavit, *see* ECF No. 340-1, which was virtually identical to the essential factual testimony James and Francis provided at the October 26, 2023, evidentiary hearing.

[22] The Court also notes that although Robinson provided affidavits from James and Francis, which were consistent with their testimony, *see* ECF No. 340, the affidavits were not created until well after Stephen had already introduced his affirmative defense in open court. The timing of the creation of these affidavits therefore further diminishes their probative value.

[23] Alternatively, Robinson has also argued that the prosecution had an affirmative duty to investigate the underlying factual basis of his pretrial motion to sever, and their failure to investigate amounted to prosecutorial misconduct that warrants precluding the government from retrying the case. *See* ECF No. 297 at 56. This theory is clearly meritless given that the Government had no duty to investigate the underlying conduct Robinson was alluding to in his motion to sever. *See Gratton v. Cochran*, No. 3:18-cv-00554, 2019 WL 13414467, at *3 (M.D. Tenn. Feb. 13, 2019) (noting that the duty to investigate wrongdoing by government officials is discretionary, not mandatory) (citing *Agunbiade v. United States*, 893 F. Supp. 160, 163 (E.D.N.Y. 1995)). Accordingly, the prosecutions decision not to investigate cannot now prevent the government from trying this case again.

*Kennedy* exception to apply). Neither Robinson nor any other witness attempted to articulate the prosecution's motive for allegedly helping Stephen formulate a defense.[24] To the extent that the Court can parse out any implicit motive from the evidence, it appears that the purported purpose of assisting Stephen was to implicate Robinson so that conviction was more likely. *See* ECF No. 340. There was no indication by a single witness, nor any other evidence produced, that the prosecution specifically intended to participate in the alleged conspiracy in order to provoke a mistrial. Without any such evidence showing the prosecution's specific intent, Robinson cannot make the requisite showing necessary to bar reprosecution here.

### 2. No Judicial Misconduct

Robinson's allegations regarding judicial misconduct also run into similar problems. While Robinson failed to offer any persuasive evidence that the Court denied his pretrial motion to sever in error, let alone in bad faith, the dagger to the heart of his judicial misconduct allegations lies with the fact that at no point has Robinson ever indicated the Court's motive for denying his motion, let alone offered evidence thereof. *See Brown*, 994 F.3d at 153-54. Since the application of the *Kennedy* exception is entirely dependent on the

---

[24] While Robinson's motion suggests that the prosecution's motive for provoking a mistrial was so that the prosecutors could have a test run of the case, Robinson offered no evidence to support this conclusory allegation. Not only did Robinson fail to provide evidence showing that the prosecution's intent in allegedly helping Stephen formulate a defense was to provoke a mistrial, but there is also no coherent reason why the prosecution would intentionally try to preemptively create the circumstances for a mistrial. As the Third Circuit explained in *Brown*, "[t]he paradigmatic case of the *Kennedy* exception is where the prosecution fears acquittal and provokes a mistrial in order to present a stronger case on retrial." 994 F.3d at 152. Here, based on the evidence produced prior to the motion for a mistrial, there was no objective reason to believe that the prosecution feared Robinson would be acquitted. Up to that point, Robinson had essentially conceded that the Government could carry its burden. The only issue left in dispute was, therefore, whether Robinson was under duress. Given the Government's general lack of concern about the defense leading up to and during the trial, the Court cannot find any reason to believe that the prosecution was fearful of an acquittal.

Moreover, as the Government correctly pointed out in its opposition motion, the prosecution gains no tactical advantage from forcing a mistral. *See* ECF 318 at 13; *see also Curtis*, 683 F.2d at 777-78 (noting tactical advantage should be considered with determining prosecutor's intent to provoke a mistrial). The Government intends to present virtually the same evidence against Robinson at the next trial as it did in the first. Furthermore, since the mistrial occurred before Robinson was able to present his case-in-chief, Robinson was able to see behind the curtain of the Government's case while the Government's lacked the same opportunity with respect to Robinson's. Accordingly, the Court fails to see the tactical advantage achieved by provoking a mistrial. There being no evidence the prosecution feared an acquittal or stood to gain an advantage by retrying the case, the Court concludes there is no evidence that the prosecution intended to provoke a mistrial.

government official's subjective intent, a lack of evidence showing that the undersigned *intended* to provoke a mistrial is fatal to Robinson's claim of judicial misconduct. *See id.* Accordingly, there is no judicial action that may serve as a basis for barring reprosecution in this case either.

## IV.     CONCLUSION

For the reasons stated above, Robinson's motion to dismiss the Indictment on grounds of double jeopardy is denied. An accompanying order of even date will follow.

**Dated:** November 8, 2023                              */s/ Robert A. Molloy*
                                                                           **ROBERT A. MOLLOY**
                                                                           **Chief Judge**